Hatch, J.
—The indictment is drawn to cover an offense created by subdivision 4, § 168, Penal Code, and charges the* defendants with the crime of conspiracy, in attempting to cheat and defraud the city of Buffalo out of a sum of money. Believed of legal verbiage, the indictment charges that the defendants conspired among themselves and with other persons to cause and compel the city of Buffalo to pay an extortionate and exhorbitant sum of money for the construction of a public work, and thereby to fraudulently obtain from the said city the sum of $2,000. The means alleged, briefly stated, are that the city had lawfully ordered the construction of a sewer in Seneca street; that in pursuance of its charter it duly advertised for sealed proposals for the performance of the work; that the defendants were contractors in said city engaged in the construction of municipal works; that after having prepared bids for the performance of said work they conspired and agreed among themselves and with others to suppress and withhold the bids so prepared, and to cause other bids to be fraudulently prepared by four of their number and submitted to the authorities of said city authorized to receive the same; that said last bids should not be for a less amount than $5,000, whereas the just and reasonable cost of said work did not *296 exceed the sum of $3,000. That they also confederated and combined together to prevent any other persons from making bids and proposals for the performance of said work. That when a bid for the work should be accepted the defendants were to meet, and by bids among themselves the work was to be awarded to the lowest bidder at the price of his bid, who should perform the work and receive the pay therefor, and the excess between the bid and the sum to be paid by the city to be divided ratably between the defendants. The indictment then alleges the means used and the overt acts done in pursuance of said conspiracy, by which it appears that three bids were prepared and submitted; that they were the only bids made, the lowest of which was the sum of $5,000. That thereafter said defendants met and bid among themselves for the performance of said said work; that the lowest bid so filed was for the sum of $2,250, for which one of their number agreed to perform the work. The demurrer admits the allegations of the indictment, but the claim is made that taken as true no crime is charged. At common law the facts alleged in this indictment would clearly constitute the offense of conspiracy within the definition laid down by Lord Denman in 4 B. & Ad., 345, that “ A common law conspiracy consists of the combination of two or more persons for accomplishing an unlawful end by lawful means, or a lawful end by unlawful means.”
In the case before us the means used were in themselves lawful, but the result sought to be accomplished was fraudulent and unlawful. The doctrine has since this case been extended in England, and the only limitation which seems to have remained, in the case of a combination of individuals, is that the thing sought to be accomplished must have been civilly wrong. This was carried so far as to uphold an indictment for a “ knock out ” at an auction, when the reason assigned was that the combination presented the false appearance of competition, and thus procured the consent of the auctioneer to a transfer of the property. Criminal Conspiracies, etc., Wright & Carson, 28.
Great difficulty was experienced in this state in settling the common law definition of conspiracy. The case of Lambert v. The People, 9 Cow., 578, is a leading case upon this subject, and furnished the basis for a settlement of the law, so far as a statutory definition may be said to settle it. In this case the court of errors, by the casting vote of its president, reversed the decision of the supreme court, and announced the offense of conspiracy to be either a combination to do a criminal act or to do an act not in itself criminal by criminal means. In other words, the object to' be accomplished must be. criminal or the means used must be so. And the court further held, that as property might be obtained fraudulently through cheating, and still not be indictable, it was essential that the means be stated in the indictment so that it might be seen whether a crime was intended. This decision was announced about 1828, and shortly after the legislature passed an act by which the crime of conspiracy was defined. Having especial reference to the offense alleged in this indictment, the statute provided § 8, “ if two or more persons shall conspire either,"' *297 subd. 4, “to cheat and defraud any person of any property by any means which are in themselves criminal,” or 5, “ to cheat and defraud any person of any property by any means which, if executed, would amount to a cheat.” This definition provided for two contingencies when accompanied by overt acts: First, to cheat and defraud by criminal means ; second, to cheat and defraud by any means which, if the fraud was accomplished, would amount to the offense of cheating. No change was made in this statute until it was incorporated into § 168 of the.Penal Code, when §§ 4 and 5 were united in one subdivision, the phraseology was changed, but the sense and construction remains the same.
The particular question here presented is as to the true construction to be given to the word cheat in the alternative part of the section, it being claimed by defendants that the word imports, and is limited, to the offense stated in chapter 6 of the Penal Code, headed, “False Personations and Cheats.” And by the People, that the word has its usual and ordinary significance, and need not necessarily import a criminal cheat as therein referred to. If the former construction is to obtain, no offense is stated under this subdivisionif the latter, the offense stated is complete. Except as discussed in a multitude of cases no attempt has been made to formally define a cheat. The early decisions leave the question in an unsettled condition, are not harmonious, and did but little beyond applying the law to particular facts. Blackstone, while prolific in definition, contents himself by indicating certain things which are constituted at common law cheats, but he does not formally define the offense. Chase’s Blackstone, 921.
The Penal Code, before referred to, is in like manner silent. It states certain things, which may be said to be cheats, although the offenses defined are called by other names; but no attempt is made to define, in terms, what constitutes a cheat.
Mr. Wharton says: “ Cheats punishable at common law may, in general, be described to be such cheats (not amounting to felony) as affect, or may affect, the public, and are effected by deceitful or illegal practices, against which common prudence could not have guarded.”
In People v. Miller, 14 Johns., 371, it is said: “ A fraud indictable at common law must be such as would affect the public, and such as common prudence would not be sufficient to guard against. As the using of false weights and measures, or false tokens, or where there has been a conspiracy to cheat.”
In People v. Stone, 9 Wend., 188, it is stated: “A fraud to be indictable at common law must be such as affects the public, or is calculated to defraud numbers, and which ordinary care and caution cannot guard against; * * * or if there, be a conspiracy to cheat; for common care and prudence are not protection against these.”
In People v. Lambert, supra, Spencer, Senator, in speaking of, criminal cheats, says: “ At the common law, it must be such a fraud as would affect the public, or as common prudence cannot guard against.” Fraud and cheat are here used as convertible *298 terms. These authorities seem to establish that at common law a distinction was made between deceitful acts, which, when committed against the individual, amount only to a private fraud, and not indictable, become indictable, when embraced in a combination, where the object of the combination is to defraud and cheat the public.
There is nothing in the discussion in the Lambert case which raised any controversy over the proposition stated in the foregoing authorities, with respect to cheats affecting the public, and the notes of the revisors who formulated the statute, the outgrowth of that case, are also silent; but they do say, in speaking of the great difficulty attendant upon defining the crime of conspiracy, that it is a sacred principle that no man shall be compelled to accuse himself of any crime. “Yet, such must be the result, or the ordinary jurisdiction of courts of equity must be destroyed by declaring any private fraud, when committed by two, or any consent to commit it, criminal.”
Not only is nothing said which indicates that any change was necessary or contemplated, but the reason assigned by them in placing the limitation upon private frauds entirely fails when applied to such frauds as affect the public. Making application of these rules to the indictment here, we find it alleged that defendants, for their benefit, caused to be made and signed false, fraudulent, exorbitant and extortionate bids and proposals for the construction of said sewer and caused them to be filed. That none of said bids were for less than $5,000, while the just, true and reasonable cost for such construction did not exceed the sum of $3,000, and thereby to cheat and defraud the said city and others out of $2,000.
The means by which the fraud was to be perpetrated is clearly set out, and from those allegations it appears that the combination was secret; that the bids which were filed, while regular upon their face, were false in fact, in that they did not and were not intended to represent just and true bids for the construction of the work, but were the means used to unlawfully create a fund to be distributed among defendants.
I am of opinion that these allegations establish a conspiracy at common law to cheat and defraud the public by means which common care and prudence were not sufficient to guard against. If this conclusion be correct, the question confronts us, has the incorporation of the provisions of the Revised Statutes in the Penal Code changed the law? It is evident to my mind that no change was contemplated and none made when the statutory definition was formulated. The words in respect to the present subject matter retained the significance which they possessed at common law. We have already seen that the statute, now in the Code, is the same as the Revised Statutes; that the consolidation and change of phraseology has worked no change of substance is conceded ; there are no words of qualification or limitation, and it would seem that the intention of the legislature was to continue the act and offense as the same existed under the Revised Statutes. Davis v. Davis, 75 N. Y., 221.
*299 Such being its construction, the offense charged, if executed, would have constituted a cheat, and consequently is an offense within the statute. It is claimed that the acts charged as an offense, simply show a combination of individuals to obtain a larger compensation for their work, and that the law^ not only does not characterize such acts as criminal, but authorizes them. I do not so read the indictment. The acts as charged show that it was the purpose and object of defendants not to obtain a larger sum for the performance of the work, but to create a large sum to be distributed among them, representing no equivalent whatever to the city. The work was to be performed at its fair price by one, the excess was to be divided, not as the representative of the increased cost of the labor, but as the fruits of the conspiracy, for no work was to be done by those who participated therein. The claim that the city could not be injured, as it possessed the power and reserved the right to reject any and all bids, is sufficiently answered in People v. Lord, 6 Hun, 390, and People v. Stephens, 71 N. Y., 527, where it is held that a combination of contractors, under which work is to be secured without competition is against public policy, is fraudulent and illegal. Examination of the allegations of the indictment, claimed to be technically defective, has been had, and the conclusion is reached that it may be upheld within §§ 275, 284, 285, Code Criminal Procedure. People v. Dimick, 11 N. Y. State Rep., 749.
These views lead to the conclusion that the demurrer should be overruled and the defendants directed to plead.