(24 Misc. Rep. 537.)

## PEOPLE v. WILLIS et al.[1]

(Supreme Court, Special Term, Kings County. September, 1898.)

1. INDICTMENT—CONSPIRACY—DUPLICITY.

An indictment for conspiracy is not bad for duplicity, under Code Cr. Proc. § 278, requiring that an indictment must charge but one crime and in one form, because overt acts charged to have been committed in pursuance of the conspiracy are of a criminal nature.

2. SAME.

An indictment for conspiracy alleged, inter alia, that the accused, as commissioner of city works, in violation of his duty, caused certain street paving to be done without competition, advertisement, or solicitation for proposals, the bills for which he "permitted" to be paid, but it did not state that the bills were "false or fraudulent." Held not to charge a felony, so as to make the indictment bad for duplicity.

3. SAME—SUFFICIENCY.

An indictment alleged that a commissioner of city work corruptly conspired with P. and others unknown to commit acts obstructing the due administration of the laws, in that they agreed that P. and others unknown would, during the commissioner's term, demand and receive moneys from unnamed city contractors in cases within the scope of the powers of the commissioner, and that he would aid them by his willful neglect of his duties as commissioner, and by permitting his subordinates to neglect theirs, in any particular in which such neglect or violation should appear to the conspirators effective to aid P. and the others unknown to obtain money from the unnamed contractors. Held, that the indictment was fatally defective, because it neither charged a crime with

[1] Reversed on appeal. See 54 N. Y. Supp. 642.

particularity, nor contained a plain and concise statement of the acts constituting it, as required by Code Cr. Proc. § 275.

4. SAME—REQUIREMENTS.

In an indictment for conspiracy to commit an unlawful act, the facts and circumstances constituting the intended act must be set forth as plainly as in an indictment for the act itself.

5. SAME—OVERT ACTS.

Overt acts committed in consummation of a conspiracy cannot be resorted to, to supplement an insufficient statement of the scope and nature of a conspiracy in the "charging" part of an indictment therefor.

6. SAME—PROOF OF CONSPIRACY.

Under an indictment for an overt act done in pursuance of a conspiracy, the conspiracy may be proved as effectively as if it constituted the gist of the charge.

Theodore B. Willis and William E. Philips were indicted for conspiracy, and demur to the indictment. Sustained.

Josiah T. Marean, Dist. Atty., for plaintiff.

Nicoll, Anable & Lindsay (Benjamin F. Tracy, Albert E. Lamb, De Lancey Nicoll, and John D. Lindsay, of counsel), for defendants.

HIRSCHBERG, J. The defendants, indicted for conspiracy, have demurred to the indictment. A previous motion to set aside the indictment was denied by Mr. Justice Van Wyck. People v. Willis, 23 Misc. Rep. 568, 52 N. Y. Supp. 808. The points then raised were (1) that the grand jury received and acted on illegal evidence; (2) that there was not sufficient evidence before the grand jury; (3) that the action is barred by the statute of limitations; and (4) that the defendant Willis was compelled to testify against himself before the grand jury. The objections to the indictment raised by demurrer are (1) that it does not conform substantially to the requirements of sections 275 and 278 of the Code of Criminal Procedure, in that it does not contain a plain and concise statement of the act constituting the crime; (2) that more than one crime is charged; and (3) that the facts stated in the indictment do not constitute a crime. It is apparent, therefore, that none of the questions now before the court were disposed of on the motion.

There is but one crime charged in the indictment, viz. a conspiracy to commit a crime, and to commit acts for the perversion and obstruction of the due administration of the laws. No conviction could be had under the indictment for any other offense than the one named. It is true that, after charging the formation and existence of the conspiracy, the indictment avers five separate and distinct overt acts which it alleges were committed in pursuance of the conspiracy; and it is evident that the performance of these acts may and probably did involve the commission by the defendants of various crimes; but the indictment, nevertheless, is not obnoxious to that provision of the Code which requires that an indictment must charge but one crime and in one form. At common law an indictment for conspiracy was complete without the averment of any act committed in furtherance of the unlawful combination. Under our Code, however, in a case where an overt act is necessary to constitute the crime, the defendant cannot be convicted, unless one or more overt acts be expressly alleged

in the indictment, nor unless one or more of the acts alleged be proved. Code Cr. Proc. § 398. The overt acts, therefore, are pleaded, not as crimes charged in the indictment, but as steps taken by the defendants in consummation of the conspiracy. Assuming that such steps constitute crimes, the fact remains that they are not presented as substantive and additional offenses. No case cited by the counsel for the defendants on this point even suggests, much less decides, that an indictment for conspiracy is bad for duplicity, because the overt acts pleaded are criminal in their nature. People v. Wicks, 11 App. Div. 539, 42 N. Y. Supp. 630. It is true that, if the overt acts include a charge of felony, the indictment would be defective because of the merger of the conspiracy, which is only a misdemeanor, in the executed felony. Lambert v. People, 9 Cow. 578; People v. Mather, 4 Wend. 229; Elkin v. People, 28 N. Y. 177; People v. McKane, 7 Misc. Rep. 478, 28 N. Y. Supp. 397. The defendants' counsel insist that one of the overt acts does distinctly charge a felony within the terms of section 166 of the Penal Code, making it a felony in a public officer to aid, consent to, or connive at the collection from a city of a false or fraudulent claim. But in the indictment the allegation referred to merely charges that the defendant Willis, as commissioner of city works of the city of Brooklyn, caused certain street paving to be done without competition, advertisement, or solicitation for proposals, the bills for which he "permitted" to be paid. The charge, however, contains no statement that the bills were "false or fraudulent"; and, although it is alleged that the work was ordered in violation of defendants' duty, there is no necessary legal deduction that, because a contract is unlawful or unauthorized, the work performed pursuant to it, and the claims or demands made for payment, are false or fraudulent. The conclusion, therefore, is that the ground of demurrer that more than one crime is charged in the indictment is not sustained.

I am, however, compelled to hold that the indictment is fatally defective in that it does not contain a plain and concise statement of the act constituting the crime, within the requirements of section 275 of the Code of Criminal Procedure. The indictment cannot be upheld as one for a conspiracy to commit a crime, for no crime is alleged in the indictment by name, allegation, description, or any other mark of identity, as the crime which the conspirators banded together to commit. If upheld, it must, therefore, be as an indictment for a conspiracy to pervert and obstruct the due administration of the laws. This conspiracy is set forth in the indictment, when stripped of legal verbiage and repetition, substantially to this effect: That in or about the month of February, 1896, the particular day to the grand jury unknown, at the city of Brooklyn, the defendant Willis, as commissioner of city works, and the defendant Philips, who was not a public officer, did unlawfully and corruptly conspire together, between themselves, and with divers other persons to the grand jury unknown, to commit acts for the perversion and obstruction of the due administration of the laws, in that they did then and there conspire and agree that the said Philips and said divers other persons should and would, during the term of Willis as commissioner, demand, obtain, and receive money from persons then or thereafter contracting or desiring, or offer-

ing or intending to contract, for the performance of labor for, or the furnishing of materials to, the city of Brooklyn, in cases falling within the scope of the powers and duties of Willis as such commissioner; and that the said Willis should and would, in order to aid and support and render effective such demands for money, and to enable Willis and such ·divers other persons to obtain the same, willfully neglect, omit, and actively violate his duty as such commissioner, imposed by law, and permit his subordinates to omit, neglect, and violate their duties as such, in any particular in which such neglect, omission, or violation should to them, the said Willis, Philips, and such divers other persons, or any of them, appear to be effective to aid said Philips and such divers other persons in obtaining money from such persons or contractors as aforesaid.

Is the act constituting the offense plainly stated, when such act consists of the violation of a public duty, and the pleader neither alleges that such public duty exists, nor points out the violation with which the offender is charged? What were the powers and duties of Willis, as commissioner of city works, with respect to persons contracting to perform labor for, and to furnish materials to, the city? What was the character of the duties which the conspirators contemplated he should neglect, omit, and willfully violate, and in what manner were these neglects, omissions, and violations of duty to be perpetrated? In what manner and to what extent would these neglects, omissions, and violations of duty aid or tend to aid the demand of money from persons contracting with the city? · And are such neglects, omissions, and violations of duty sufficiently characterized within the rules of precision required in a criminal accusation, by saying that they were to be whatever to unknown persons might appear effective in demanding and receiving money from some one desiring to supply the city of Brooklyn with labor and materials? If so, an indictment has no office to discharge by way of acquainting a defendant with the nature and scope of the charge he is to meet; and an accused official must be prepared with evidence upon the trial to justify each and every act and omission of his official life, and each and every act and omission of each and every subordinate during the same period. The presumption of innocence and the constitutional right of defense are inconsistent with the imposition of such an onerous and intolerable burden. Furthermore, the demanding and receiving money from persons contracting with the city is not in itself a crime. If for an unlawful purpose, or as an unlawful means to an ulterior end, it would, of course, become so. But, in order to enable a court to see that it is so, the unlawful purpose must be plainly and expressly declared, and the unlawful means plainly and expressly pointed out. And this must be done, not by a general statement as a conclusion of law, but by setting forth the facts and circumstances from which the unlawful purpose or means may be plainly deduced. Nor does an indictment for conspiracy to commit an unlawful act differ in this respect from an indictment for the perpetration of the act itself.

· As was said by Chief Justice Gibson in Hartmann v. Com., 5 Pa. St. 60:

"To constitute a conspiracy, the purpose to be effected by it must be unlawful either in respect of its nature or in respect of the means to be employed for its accomplishment; and the intended act, where it has not a common-law name to import its nature, must, in order to show its illegality, be set forth in an indictment of conspiracy, with as much certainty as would be necessary in an indictment for the perpetration of it."

An examination of the adjudicated cases will surely reveal the simple and direct principles which control and determine the sufficiency of an indictment.

In People v. Burns, 53 Hun, 274, 6 N. Y. Supp. 611, an indictment for selling adulterated milk was held defective because it did not state the purchaser. The court said:

"To constitute such sale, there must have been a purchaser, and the defendant was entitled to be informed by the indictment who such purchaser was, so that he could be prepared to disprove such sale upon the trial, if it had not been made as alleged. The omission of such statement in the indictment constituted a material defect, as without it the defendant would be liable to surprise upon the trial, and quite likely to be prejudiced by such omission. The defect, therefore, must be regarded as matter of substance, and not merely of form, as it was the right of the defendant to be informed not merely of the crime charged, but also of the act which constituted it."

In People v. Gregg, 59 Hun, 107, 13 N. Y. Supp. 114, the defendant was indicted under a statute prohibiting a police official from being interested in the manufacture or sale of spirituous liquors. The indictment charged the defendant with willfully, fraudulently, and intentionally engaging in the manufacture and sale of spirituous liquors at the city of Hudson during a specified time while the defendant held the office of mayor, acting as head of the police under the city charter; but the precise time, and the place and manner of the alleged manufacture and sales, were not set forth. The court said (59 Hun, 110, 13 N. Y. Supp. 115):

"There is no concise statement in the indictment of the act constituting the crime, as required by subdivision 2 of section 275 of the Code of Criminal Procedure; nor does the indictment anywhere set forth the act charged as an offense as clearly required by the form prescribed by the legislature in section 276 of the Code. These requirements are clearly embraced in the Criminal Code, and must be considered in determining the sufficiency of an indictment. The object of a statement of the act charged as criminal in an indictment is to inform the accused of the exact nature of the charge made against him. That is the primary object of all pleading in criminal as well as civil proceedings. It is not enough to allege that the accused committed murder, without alleging the name of the victim, or to charge burglary or forgery without stating what was burglarized, or in what the forgery consisted; nor is it sufficient to allege in general terms, under section 1 of chapter 163 of the Laws of 1890, that the defendant 'fraudulently and intentionally engaged in the manufacture and sale of spirituous,' etc., without any statement of the time, place or manner."

In People v. Gleason, 75 Hun, 572, 27 N. Y. Supp. 670, an indictment charging a person with the crime of auditing a false claim against a municipal corporation was held defective because it failed to state that it was the duty of the defendant to audit bills.

In People v. Dumar, 106 N. Y. 502, 13 N. E. 325, the defendant was charged with grand larceny in unlawfully and feloniously stealing, taking and carrying away certain described property. On the trial

it appeared that the defendant obtained possession of the property from the owner, upon a sale on credit, induced by false and fraudulent representations; and although that act, under the Code, constitutes grand larceny, the conviction was reversed by the court of appeals, because the indictment did not charge the specific act which was proven on the trial. The court held (106 N. Y. 512, 13 N. E. 328) that the general principle of pleading before and since its enactment has not been changed by the Criminal Code. "Under either system," said the court, "an offense consists of certain acts done or omitted under certain circumstances; and under neither is any indictment sufficient which does not accurately and clearly allege all the ingredients of which the offense is composed, so as to bring the accused within the true meaning and intent of the statute defining the offense."

In People v. Stark, 136 N. Y. 538, 32 N. E. 1046, the indictment charged, in substance, that the defendant maliciously published, at a designated time and place, of and concerning one Asa T. Soule, a false and scandalous libel, which was set forth verbatim, but the indictment contained no averment as to the manner of publication, the person to whom it was addressed, or by whom it was seen or read. The accusation, if good, could have been proven by proof of publication in any newspaper or community. The court affirmed a reversal of the defendant's conviction, stating (136 N. Y. 542, 32 N. E. 1047) that an "indictment which exposes the defendant to attack from so many unexpected quarters fails to adequately fulfill the office which it was intended to perform as a pleading in a complete system of criminal procedure."

To the like effect was the decision in People v. Albow, 140 N. Y. 130, 35 N. E. 438; and, in the opinion of the court, Chief Judge Andrews stated (140 N. Y. 134, 35 N. E. 439) that the rule "that the offense must be charged in plain and intelligible language, and that the indictment must set forth all the essential elements of the crime, is and ought to be preserved alike for the protection of the accused and in the interest of the certain and orderly administration of the criminal law."

In U. S. v. Kessel, 62 Fed. 57, a federal officer was indicted for asking "a gratuity, the nature of which is unknown to the grand jurors," with intent to have his official action influenced thereby. The statute was aimed at the unlawful use of money or something of value, and the court held that, although the word "gratuity" was sufficient to satisfy the terms of the statute, a demurrer to the indictment should be sustained because it does not charge the nature of the gratuity, and the defendant is therefore not informed of what he is to meet in evidence.

In Hartmann v. Com., supra, the indictment was for conspiracy to cheat and defraud by removing and secreting goods of the defendants, so that they could not be reached by creditors. The time, place, and circumstances were not set forth, nor were the goods described specifically either by the place where they were kept or by the person who had them in custody. Chief Justice Gibson held these omissions fatal, stating (page 66) that "precision in the description of the

offense is of the last importance to the innocent, for it is that which marks the limits of the accusation and fixes the proof of it."

In the leading case in this state of Lambert v. People, 9 Cow. 578, an indictment for conspiracy to cheat and defraud was held defective because it did not particularly set forth the means intended to be used by the conspirators, and show that those means were criminal. The authority of this case upon this point has never been questioned so far as I can find.

In U. S. v. Cruikshank, 92 U. S. 542, the defendants were indicted for conspiracy to hinder and delay citizens of the United States of African descent, named specifically in the indictment, in the exercise of their rights, privileges, and immunities granted by statute. The indictment was held too vague and uncertain, in that it did not state the deprivation of any particular right as the object of the conspirators. Chief Justice Waite, delivering the opinion of the supreme court of the United States, said (page 558):

"A crime is made up of acts and intent, and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances. It is a crime to steal goods and chattels, but an indictment would be bad that did not specify with some degree of certainty the articles stolen. This, because the accused must be advised of the essential particulars of the charge against him, and the court must be able to decide whether the property taken was such as was the subject of larceny. So, too, it is in some states a crime for two or more persons to conspire to cheat and defraud another out of his property, but it has been held that an indictment for such an offense must contain allegations setting forth the means proposed to be used to accomplish the purpose. This, because, to make such a purpose criminal, the conspiracy must be to cheat and defraud in a mode made criminal by statute; and, as all cheating and defrauding has not been made criminal, it is necessary for the indictment to state the means proposed, in order that the court may see that they are in fact illegal. State v. Parker, 43 N. H. 83; State v. Keach, 40 Vt. 118, Alderman v. People, 4 Mich. 414; State v. Roberts, 34 Me. 321. In Maine it is an offense for two or more to conspire with the intent unlawfully and wickedly to commit any crime punishable by imprisonment in the state prison; but we think it will hardly be claimed that an indictment would be good under this statute which charges the object of the conspiracy to have been 'unlawfully and wickedly to commit each, every, all, and singular the crimes punishable by imprisonment in the state prison.' "

In U. S. v. Walsh, 5 Dill. 58, Fed. Cas. No. 16,636, a federal superintendent of construction and his assistants were indicted for conspiracy to defraud the United States by certifying that certain false and fraudulent accounts and vouchers for labor and materials performed and furnished for use in the construction of a custom house and post office were true and correct. A demurrer to the indictment was sustained, on the ground that the charge was too general and indefinite, and that the specific accounts and vouchers should be set forth, not only that the accused might have an opportunity to prepare their defense, but that the court might see that the accounts and vouchers were such "that an intent to defraud the United States can be predicated of them."

In U. S. v. Simmons, 96 U. S. 360, a count in an indictment was held defective for not stating the name of the person procured by the defendant to use a certain still in violation of a federal statute,

and also for not averring with sufficient precision the use to which the building containing the still was devoted. Mr. Justice Harlan said (page 362):

"Where the offense is purely statutory, having no relation to the common law, it is, 'as a general rule, sufficient in the indictment to charge the defendant with acts coming fully within the statutory description, in the substantial words of the statute, without any further expansion of the matter.' 1 Bish. Cr. Proc. § 611, and authorities there cited. But to this general rule there is the qualification, fundamental in the law of criminal procedure, that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defense, and plead the judgment as a bar to any subsequent prosecution for the same offense. An indictment not so framed is defective, although it may follow the language of the statute."

In U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, the defendant was indicted for violating a statute prohibiting correspondence through the post-office establishment of the United States, or the inciting of any person to open communications through such post office in aid of any scheme to defraud. The indictment charged the defendant with having devised on a certain day and at a specified place a scheme to defraud divers persons to the jurors unknown, which he intended to effect by inciting such other persons to open communications with him by means of the post-office establishment of the United States, and with having unlawfully received from the post office at New York a certain letter in attempting to execute said scheme, which letter and its address were set forth, verbatim. The court held that, while a statutory offense may be described in the general language of the law, the description must, nevertheless, be accompanied by a statement of all the particulars essential to constitute the offense or crime, and to acquaint the accused of what he must meet on 'the trial. The indictment was declared defective because it did not state the particulars of the alleged scheme to defraud. Mr. Justice Field (124 U. S. 486, 8 Sup. Ct. 573) declared the rule to be that "no essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment or implication, and the charge must be made directly, and not inferentially, or by way of recital."

See, also, People v. Pillion (Sup.) 29 N. Y. Supp. 267; U. S. v. Carll, 105 U. S. 611; People v. Haight, 54 Hun, 8, 7 N. Y. Supp. 89; People v. Danihy, 63 Hun, 579, 18 N. Y. Supp. 467; People v. Laurence, 66 Hun, 574, 21 N. Y. Supp. 818; People v. Winner, 80 Hun, 130, 30 N. Y. Supp. 54; People v. Stone, 85 Hun, 130, 32 N. Y. Supp. 519; People v. Hubbard, 10 Misc. Rep. 104, 31 N. Y. Supp. 114; People v. Lowndes, 130 N. Y. 455, 29 N. E. 751; People v. Rosenberg, 138 N. Y. 410, 34 N. E. 285.

It is unnecessary to add kindred citations. They are numerous, uniform, and consistent. As against them, it is sufficient to say that the district attorney has not cited in his brief a single case of any jurisdiction whatever in support of the form of this indictment.

The attitude of the indicted official, Willis, towards those who might contract with the city, the nature of his powers and responsibilities in the premises, the character of the duties he was called

upon to perform, the fact that he was invested by law with the power of awarding contracts for labor and materials, the scope and extent of the violations of duty embraced in the scheme of the conspiracy, the facts and circumstances showing that the contemplated acts and omissions amount in law to a violation of official duty, and the relation of such violations of duty to the award of contracts, necessarily involving the effectiveness of demands' for money from prospective contractors to be rewarded by the results of the official malfeasance, are all essential ingredients of the crime, and integral parts of the act constituting it, and, by the settled rules of criminal pleading, should all be specifically alleged, in order that the defendants should be apprised of the contemplated wrongdoing which the people intend to prove against them, and the court enabled to see that the official acts and omissions embraced in the purpose of the conspiracy were in fact unlawful, and such as could tend to be effective in supporting the demand and receipt of money from persons entering upon contractual relations with the city of Brooklyn. Under such intelligible and enlightened rules, it is manifestly insufficient to say that the conspiracy was formed for such vague, general, and indefinite purposes that its existence and criminality could be proven upon the trial by showing a demand for money from unnamed individuals desiring to contract with the city in return for undisclosed violations of duty on the part of unnamed subordinates of the accused, in any particular which to persons unknown might appear to be effective. The imperfection is not one of form merely, but one which tends to the prejudice of the substantial rights of the defendants, upon the merits.

I do not lose sight of the fact that the averment of overt acts does state and set forth certain official duties and obligations imposed upon the defendant Willis, as commissioner of city works. These allegations, however, do not cure the defect. None of them relate to the time of the formation of the conspiracy, viz. the month of February, 1896, but all charge him with official obligations existing some months afterwards. Nor, taken together, do they embrace allegations showing such an official relation to the subject-matter of the conspiracy as the recorded adjudications require. Moreover, it seems to be the settled law that resort cannot be had to the averment of overt acts committed in consummation of the conspiracy, for the purpose of eking out or supplementing an insufficient or inadequate statement of the scope and nature of the conspiracy in the "charging" part of the indictment. Reg. v. King, 7 Adol. & E. (N. S.) 782, 807; Com. v. Hunt, 4 Metc. (Mass.) 125; Com. v. Shedd, 7 Cush. 514; People v. Arnold, 46 Mich. 268, 9 N. W. 406; People v. Brickner (O. & T.) 15 N. Y. Supp. 529; U. S. v. Britton, 108 U. S. 199, 2 Sup. Ct. 531; Pettibone v. U. S., 148 U. S. 197, 13 Sup. Ct. 542.

The conclusion is imperative that the indictment wholly fails to fulfill its office. It neither charges a crime with the particularity which the Criminal Code demands, nor contains a plain and concise statement of the act constituting the crime intended to be charged.

In reference to the future disposition of the case, it is to be noted that, assuming, as I must, that the grand jury had evidence war-

ranting the allegations of overt acts contained in this indictment, the defendants are amenable to indictments and prosecution for actually consummated misdemeanors, and possibly felonies. Under such indictments, the conspiracy can be proven with the same effect as if it constituted the gist of the charge. People v. McKane, 143 N. Y. 455, 38 N. E. 950. The object to be served in selecting the original conspiracy for prosecution rather than the executed offenses which resulted from it is not apparent. In order, however, that this decision may not in any respect interfere with the official policy of the district attorney, and it being apparent that the objection on which the demurrer is allowed may be avoided in a new indictment, I direct the case to be submitted to another grand jury. Ordered accordingly.