THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY V. A. W. BROWN.

No. 16,011.

### SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Statute Requiring Employer to Give Reason for Discharge of Employee Invalid.* A statute which requires an employer of labor, upon request of a discharged employee, to furnish in writing the true cause or reason for such discharge is repugnant to section 11 of the bill of rights of this state, and is invalid.

2. ——— *Police Regulation.* The duty imposed upon employers by section 2422 of the General Statutes of 1901 is not a police regulation, and is an interference with the personal liberty guaranteed to every citizen by the state and federal constitutions.

Error from Lyon district court; FREDERICK A. MECKEL, judge. Opinion filed June 5, 1909. Reversed.

### STATEMENT.

A. W. BROWN was in the employ of the defendant railway company as a brakeman. It seems that on his run the company had a detective, garbed as a tramp, who rode from Florence to Newton on the train upon which Brown was employed. This detective reported to the trainmaster of the company that Brown had received from him forty cents as fare for riding between those stations and had appropriated the same to his

own use. Brown was called before the trainmaster at Newton, under whom he was employed, and informed of the charge and told that unless he proved his innocence he would be discharged. Brown asserted his innocence and offered to be sworn to his statement, but, on such investigation as the company saw fit to make, he was discharged.

Thereafter, in accordance with chapter 144 of the Laws of 1897 (Gen. Stat. 1901, §§ 2421-2424), he demanded of the company a statement in writing of the true cause or reason for his discharge. This was given on a blank prepared for that purpose, the reason stated being "discharged for cause," and the same was signed by a superintendent of the company. This statement or service-letter was delivered to Brown, who thereafter applied to two or three railroad companies for employment, and upon request therefor presented his service-letter and was refused employment. He also made application to various officers of the defendant company, including the general manager, Hurley, to be reinstated, but this was denied. He thereupon brought this action, and recovered judgment for $300 damages and $30 attorney's fees.

The company brings the case here.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the plaintiff in error.

*J. Jay Buck, S. S. Spencer, L. B. Kellogg,* and *C. M. Kellogg,* for the defendant in error.

The opinion of the court was delivered by

SMITH, J.: It is not contended that the judgment is excessive or that it is not supported by sufficient evidence, if the law (chapter 144 of the Laws of 1897) is valid. The statute requires the employer, upon the request of a discharged employee, to furnish in writing the true cause or reason for such discharge. The railway company did not meet this requirement. Its "serv-

ice-letter," as it is called, stated only that Brown was discharged "for cause." This is not a statement of "the cause" or of any cause.

It is also alleged that the service-letter was issued in furtherance of a conspiracy existing between the defendant and other railroad companies to prevent employees of one company from getting employment in another company without the consent of the former employer. This claim is not supported by any evidence.

"To constitute a conspiracy the purpose to be effected by it must be unlawful, either in respect of its nature or in respect of the means to be employed for its accomplishment. (*People v. Willis*, 54 N. Y. Supp. 129, 133, 24 Misc. Rep. 537; *People v. Olson*, 15 N. Y. Supp. 778, 779; *Payne v. Western & Atlantic R. Co.*, 81 Tenn. [13 Lea] 507, 521, 49 Am. Rep. 666.)" (2 Words & Ph. Jud. Def. 1460.)

There was nothing in the evidence to show that there was an unlawful purpose contemplated or that unlawful means were to be used. All that is shown is that upon Brown's application to two other railroad companies request was made for his service-letter, when he informed the employment agent that he had worked for the defendant company, and that upon the presentation of his letter employment was refused him. Probably he could have secured employment only upon the presentation of a letter. recommending him as a desirable employee, and a letter stating the true cause of his discharge, which appears to have been sufficient in the mind of the employment agent of the defendant company to remove him from its employment, would not have availed him. If so, he was not damaged by the failure of the defendant to state the true cause of his discharge.

It may be said that if the law is valid the company need have no concern as to the effect of its compliance with the letter of the law. This leads us to the principal contention of the company—that the law is un-

constitutional; that it is repugnant to section 11 of the bill of rights of the state of Kansas, which provides:

"All persons may freely speak, write or publish their sentiments on all subjects, being responsible for the abuse of such right."

It is also contended that the law is repugnant to the fourteenth amendment to the constitution of the United States, which provides:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law."

It has been conceded in argument that in the absence of a contract of employment for a definite term the master may discharge the servant for any reason or for no reason, and that the servant may quit his employment for any reason or for no reason. Such action on the part of the employer or the employee, where no obligation is violated, is an essential element of liberty in action. Can one, then, be compelled to give a reason or cause for an action for which he may have no specific reason or cause, except, perhaps, a mere whim or prejudice? Again, is not the freedom to remain silent—neither to write or publish anything on a certain subject—involved as an element in the guaranty that "all persons may freely speak, write or publish their sentiments on all subjects, being responsible for the abuse of such right"? It would seem that the liberty to remain silent is correlative with the freedom to speak. If one must speak, he can not be said freely to speak.

The statute in question, like its companion statute, chapter 120 of the Laws of 1897, was the outgrowth of the financial and business depression preceding that session of the legislature. Employers sought to recoup their loss of incomes by scaling the wages of the employees, and laborers sought to resist the decrease in wages or to compel an advance by uniting in labor

organizations.   The remarks of the late Mr. Justice Greene in holding the provisions of chapter 120 of the Laws of 1897 unconstitutional are equally applicable to the provisions of the law in question.   An excerpt from the opinion in *Brick Co. v. Perry,* 69 Kan. 297, reads:

"Before approaching a discussion of the question let us exclude any notion that the act in question is a police regulation.   It will be observed that it does not affect the public welfare, health, safety or morals of the community, or prevent the commission of any offense or other manifest evil.   Where the object of the act can not be traced to the accomplishment of some one of these purposes it is not a police regulation.   Besides, the legislature has no power to impair or limit the reasonable and lawful exercise of a right guaranteed by the constitution, under the guise of a police regulation.   It must also be remembered that the right which the plaintiff claimed was violated did not originate in contract, but was purely statutory; therefore, the determination of the question whether he has any remedy depends entirely upon the validity of this statute."   (Page 299.)

. When the relation of employer and employee has ceased by discharge or by quitting the employment, if the employee has been efficient and trustworthy the employer may be under a moral obligation to benefit the employee by giving him a statement to that effect. On the other hand, if the employee has been inefficient or untrustworthy it may be the employer's moral duty to furnish a prospective employer, upon request or perhaps without request, a statement of these facts.  But the former employer is under no legal obligation so to do, either to his ex-employee or to the prospective employer.   The public has no interest in the matter, and in neither case can such a duty be imposed as a police regulation, and the attempt by statute to impose the furnishing of such a statement is an interference with personal liberty.

The mere matter of time requisite to comply with the requirement of the statute is perhaps a matter of trifling consideration, yet if the state may compel the

sacrifice of a few minutes of the time of one person for another, may it not compel the sacrifice of a few days of time? Where and upon what principle shall the limit be placed? Again, if the employer can be compelled to state the true cause of discharge it implies that he should state the facts as he understands them, and the facts may be in dispute and may be regarded by the employee as libelous. Litigation may result therefrom which might be a great burden to the employer, although successfully defended. We think the state can impose no such possible burden. As in many other relations in life, the employer may be silent and be safe, or, at his option, he may be courteous and fulfil his moral obligation. It is a personal privilege.

The judgment is reversed, with instructions to set aside the judgment and to enter judgment for the defendant.