\* THE STATE OF KANSAS, *Appellee,* V. T. B. COPPAGE, *Appellant.*

No. 18,088.

SYLLABUS BY THE COURT.

1. CRIME—*Employer and Employee—Coercing an Employee to Make Agreement.* An employer has no inherent right to coerce an employee, as a condition of remaining in his employment, to make a written or verbal contract not to become or remain a member of a labor organization.

2. CONSTITUTIONAL LAW—*Employer and Employee—Coercion of Employee.* The legislature deeming such coercion against public policy violated no constitutional rights of employers in the enactment of sections 4674 and 4675 of the General Statutes of 1909, and such sections are valid.

Appeal from Bourbon district court. Opinion filed July 6, 1912. Affirmed.

*R. R. Vermilion,* of Wichita, for the appellant.

*John S. Dawson,* attorney-general, and *Chester A. Ramsey,* county attorney, for the appellee.
pellee.

*J. I. Sheppard, James S. Sheppard,* and *Kate Sheppard,* all of Fort Scott, as *amici curiæ.*

The opinion of the court was delivered by

SMITH, J.: About July 1, 1911, one A. R. Hedges was employed as a switchman in the yards of the St. Louis & San Francisco Railway Company at Fort Scott, Kan., and was a member of a labor organization called the Switchmen's Union of North America. The appellant was employed by the railway company as superintendent. The appellant, as such superintendent, requested Hedges to sign an agreement, which he presented to Hedges in writing, and informed him that if he did not sign it he could not remain in the employ

---

\* This case is pending in the supreme court of the United States on a writ of error allowed July 19, 1912.

The State v. Coppage.

of the railway company. The following is the writing presented:

"Fort Scott, Kansas.......... 1911.

"Mr. T. B. Coppage, Superintendent,

"Frisco Lines, Fort Scott.

"We, the Undersigned, have agreed to abide by your request, that is, to withdraw from the Switchmen's Union, while in the service of the Frisco Company.

(Signed) ....................
....................
...................."

Hedges refused to sign the writing and refused to withdraw from the labor organization. Thereupon appellant, as such superintendent, discharged Hedges from the service of the railway company. Thereafter this criminal action was instituted by information, setting forth, in substance, the above facts. The appellant moved to quash the information on several grounds, the principal ones of which were that the information charged no public offense under the laws of the state of Kansas, and that there was no valid law making the acts charged in the information a public offense. The motion was overruled. The case came regularly on for trial, a jury was waived, and the parties stipulated that the case be tried to the court. Arraignment was waived and a plea of not guilty entered. Thereupon the state offered evidence of the facts above stated and the appellant submitted the case without evidence. On consideration thereof the court found the appellant guilty as charged. Motions for a new trial and in arrest of judgment were overruled and proper exceptions saved. The only question presented on the appeal is the validity of sections 4674 and 4675 of the General Statutes of 1909, which read:

"That it shall be unlawful for any individual or member of any firm, or any agent, officer or employee of any company or corporation, to coerce, require, demand or influence any person or persons to enter into any agreement, either written or verbal, not to join

48—87 KAN.

or become or remain a member of any labor organization or association, as a condition of such person or persons securing employment, or continuing in the employment of such individual, firm or corporation.

"Any individual or member of any firm or any agent, officer or employé of any company or corporation violating the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in a sum not less than fifty dollars or imprisoned in the county jail not less than thirty days."

Each party, in argument, assumed that if section 4675, making it a misdemeanor to do any of the things denounced as unlawful in section 4674, is constitutional and valid, then the ruling on the motion to quash the information and the final judgment of the court should be affirmed, otherwise the ruling and judgment of the court should be reversed. Our attention has been called to no other decision upon a statute, except *The State, ex rel., v. Daniels,* (Minn. June, 1912), 136 N. W. 584, like the statute in question. The statute of Minnesota, the validity of which was involved in the decision, is practically the same as ours. The syllabus reads:

"Under the decision of the supreme court of the United States in *Adair v. United States,* 208 U. S. 161, which this court must follow and apply, it is held that a criminal complaint based on section 5097, R. L. 1905, which merely alleges that the employer required the employe to enter into a verbal agreement not to remain a member of a labor organization as a condition of retaining his employment, does not state a criminal offense." (Syl. ¶ 1.)

The relator was charged and had been convicted of requiring an employee of a railroad company, as a condition of remaining in such employ, to enter into a verbal agreement not to remain a member of a certain labor organization. He was convicted and sentenced to jail in the custody of the sheriff. The district court in a habeas corpus proceeding released him

from custody. The case in the supreme court was on the appeal of the sheriff from that judgment.

It will be observed that the Minnesota decision is based upon the Adair case. In the latter case the accused was not convicted of requiring the employee to make an agreement not to become or remain a member of a labor organization, but was convicted for discharging the employee because of his membership in a labor organization. After discussing the case generally, the opinion (*Adair v. United States*, 208 U. S. 161) says:

"It thus appears that the criminal offense charged in the count of the indictment upon which the defendant was convicted was, in substance and effect, that being an agent of a railroad company engaged in interstate commerce and subject to the provisions of the above act of June 1, 1898, he discharged one Coppage from its service *because of his membership in a labor organization*—no other ground for such discharge being alleged." (p. 171.)

In the next paragraph of the opinion the court formulated the question presented as follows:

"May congress make it a criminal offense against the United States—as by the tenth section of the act of 1898 it does—for an agent or officer of an interstate carrier, having full authority in the premises from the carrier, to discharge an employee from service simply because of his membership in a labor organization?" (p. 171.)

By the syllabus it also appears that the provision in section 10 of the act, making it a crime for an employer to discharge an employee for the reason that the employee is a member of a labor organization, was the only provision of the act which was held unconstitutional. We think the Adair case does not support the Minnesota decision and has no application to the case at bar.

It is a matter of common knowledge, of which legislatures and courts should take cognizance, that many

individual laborers are unable to cope on an equal footing with wealthy individual or corporate employers as to the terms of employment; also that both employers and employees are in fact separately associated in organizations for the purpose of advancing their respective and, in certain respects, conflicting interests. It goes without saying that the individual employee can not coerce his employer from remaining a member of his association and that the individual employer may so coerce his employee unless restrained therefrom by law. If no restraining law is held valid by the courts, we then have this situation: the employers' association prescribes to its members conditions which they, perhaps under penalty, must impose upon their several employees; the individual employee is, in the supposed case, pitted not only against his employer in contracting the conditions of employment, but also against the aggregation of associated employers. That such a condition, if real, tends to reduce employees to mere serfdom can not be questioned. The public can not be said to be uninterested. The legislature stands in the place of the public as its representative, and, if the legislature is not debarred therefrom by constitutional limitations, it devolves upon it to determine whether any restrictions are necessary and, if so, what the restrictions shall be. The courts should enforce the acts of the legislature unless they are repugnant to the constitution of the nation or state. If experience and changed conditions demonstrate that the constitutional limitations work or permit injustice, there is still a remedy but it is not in the courts.

It is said that an employer has the right to prescribe such conditions of employment as he may choose and the employee may accept or reject them. This, if true, does not dispose of this case. Here the employer required the employee to make a contract pledging his honor not to do an act which he had a legal right to do, which did not necessarily affect his duty to his em-

ployer, and which the legislature by the act in question, in effect, said it is against public policy and unlawful to coerce an employee to do.

The gravamen of the offense charged in this action is the attempt to coerce, require, demand or influence any person or persons to enter into any agreement, either written or verbal, not to join or become or remain a member of any labor organization or association, as a condition of such person or persons securing employment or continuing in the employment of the individual, firm or corporation making the demand. The force of the statute is to make it illegal to compel any employee to make a written or verbal agreement which presumably he may not wish to make. None of the other statutes except the statute of Minnesota, the validity of which has been adjudicated, is like this.

In *Brick Co. v. Perry,* 69 Kan. 297, 76 Pac. 848, it was held that a statute which makes it unlawful to discharge an employee because he belongs to a labor organization is void for the reason that it invades the right of the employer to terminate a contract. It was held in *Railway Co. v. Brown,* 80 Kan. 312, 102 Pac. 459, that an employer has a right to discharge at any time, for any reason or for no reason, being responsible in damages for violating a contract as to the time of employment. This is the general doctrine, we believe, without dissention. Conversely, it is the right of the employee to quit his employment at any time, for any reason or without any reason, being likewise responsible in damages if he violates his contract with the employer. In *State v. Julow,* 129 Mo. 163, 31 S. W. 781, 29 L. R. A. 257, it was held that "a right to insist that employees shall withdraw from or refrain from joining any trade-union or labor union as a condition of employment, or continued employment, is within the constitutional rights of an employer" (29 L. R. A. 257, headnote, ¶ 1), and that a statute making such acts criminal is in violation of the constitution of the United

States. In *Gillespie v. The People,* 188 Ill. 176, 58 N. E. 1007, 52 L. R. A. 283, it was held that "a statute making it unlawful to prevent or attempt to prevent, an employee from joining any lawful labor organization, or to discharge an employee because of his connection with such an organization, and providing a penalty therefor . . . is void, since the right to terminate a contract, subject to liability to respond in a civil action for an unwarranted termination, is within the protection of the provisions of the state and Federal Constitutions, which guarantee that no person shall be deprived of life, liberty or property without due process of law." (52 L. R. A. 283, headnote, ¶ 1.)

This and the Julow case were the pioneer decisions on the question involved, namely, the construction of statutes relating to labor organizations. They have been frequently quoted and followed. The statutes are held unconstitutional for the reason that they deprive the employer of the right to contract or to terminate a contract. In a sense, the questions therein decided are the converse of this case. Our statute denounces as crime the requiring or coercing of an employee to make a written or verbal contract, as a condition of employment or continuing employment, that he will not join a labor organization.

The freedom of the employees to contract, or to terminate a contract, is as sacred under the constitutions of the state and nation as is the freedom of the employer to contract or to terminate a contract. Labor organizations are generally recognized as beneficent to both the members thereof and to the public. The members are in the meetings taught to aspire to greater efficiency in their vocations. They are also bound to assist the sick, infirm and unfortunate among the members, and in many other respects are not only not inimical to the best interests of society but are helpful and beneficial. The legislature, in passing the act in question, probably also took into consideration a fact of gen-

eral knowledge, that employees, as a rule, are not
financially able to be as independent in making con-
tracts for the sale of their labor as are employers in
making contracts of purchase thereof.   To many the
demands for housing, food and clothing for their fam-
ilies and the education of their children brook no in-
terruption of wages to the breadwinner.   Necessity
may compel the acceptance of unreasonable and unjust
demands.   The state is interested in healthful con-
ditions for its wage-earners and in the moral and in-
tellectual development of their children; also that none
should become dependent upon the state for support.
Employers, so far as they may be considered a class
of society, ought to be and usually are interested in all
that tends to better the conditions of their employees.
To such, as to other good citizens, the condemnation of
just criminal laws has no terror but are recognized as
shields and safeguards.   The employer and not the
employee is the master of the business to be carried on,
and it follows that he has the right to impose such
terms of employment as within reason and justice seem
good to him.   The employee must accept the conditions
or refuse the employment.   The employer has no right
by virtue of these relations to dominate the life nor to in-
terfere with the liberty of the employee in matters that
do not lessen or deteriorate the service.   For instance,
while the employer may rightfully discharge for drunk-
enness, he has no inherent right to dictate the church
communion of the employee.   Our statute implies that
labor unions are lawful and not inimical to the rights
of employers, although no qualifying word or words
are used in that connection.   If so, liberty of lawful
action being an inviolable right, the legislature was
within the exercise of its proper power in denouncing
as criminal any attempt to coerce an employee, under
the resistless pressure of necessity, to bargain away
his liberty.

No right of the employer to contract is taken away

or interfered with by the act in question. Practically, the liberty of the employee to contract or refuse to contract not to join a labor union is of little or no commercial value to him, but this is also true of many cherished personal liberties. The employer may discharge an employee for the reason that the employee belongs to a labor union, or for the reason that he belongs to a particular church or to no church, or for any reason, or from mere whim without assigning any reason, and the employee is equally free to quit his employment. Yet an employer has no constitutional or inherent right to coerce or compel his employee to make any contract or agreement, written or verbal, which he does not wish to make, whatever may be the condition or purpose.

The state has the right to protect the freedom and independence of employees from any encroachment thereon and make such encroachment a criminal offense whenever in the judgment of the legislature such encroachment constitutes a wrong upon the public generally, as when one makes an assault upon another it is a crime against the state.

The judgment is affirmed.

WEST, J., dissents.

PORTER, J. (dissenting): The law obviously was not passed because any person seriously believed its enforcement would result in real benefit to the laboring men or to labor unions. It is like the old soldier's preference law, and similar enactments, "That keep the word of promise to our ear and break it to our hope." After reading the majority opinion, members of labor unions may rest for a time under the delusion that the legislature, in the exercise of the police power, has reached out its strong arm to shield the laboring man from the attempts of his employer to deprive him of the right to become and continue a member of a labor union, and that the construction placed upon the act

by the court has made the legislation effective to accomplish the purpose, but a perusal of former decisions of this court, in *Brick Co. v. Perry,* 69 Kan. 297, 76 Pac. 848, and *Railway Co. v. Brown,* 80 Kan. 312, 102 Pac. 459, will cause the delusion to disappear. It was held in the brick company case that:

"A statute which makes it unlawful to discharge an employee because he belongs to a lawful labor organization and provides for the recovery of damages for such discharge is void. The right to terminate a contract is within the protection of the state and federal constitutions, which guarantee to every citizen the protection of life, liberty, and property." (Syl.)

In *Railway Co. v. Brown,* supra, (1909) this court held that an employer has a right to discharge an employee at any time for any reason or for no reason. These decisions are cited with approval in the majority opinion without serious attempt to distinguish the principle upon which they were decided from that involved in this case. Nor is there any substantial ground upon which to rest a distinction. If it is not within the power of the legislature to make it a criminal offense for an employer to discharge an employee because the latter belongs to a lawful labor organization, it is equally beyond the power of the legislature to make it a criminal offense for him to notify the employee of his intention to discharge him for that reason and to inform him that he will be retained if he ceases to be a member of such organization. The employer may lawfully discharge him for being a member and inform him of the reason. The employee may, by renouncing his membership in the organization, at once be reëmployed by the same person; so that under the former decisions the employer is permitted lawfully to accomplish indirectly the same thing that the present statute declares to be a crime. It was said by

the late Justice Harlan, in *Adair v. United States*, 208 U. S. 161, 52 L. Ed. 436:

"It was the right of the defendant (the employer) to prescribe the terms upon which the services of Coppage (the employee) would be accepted, and it was the right of Coppage to become or not, as he chose, an employee of the railroad company upon the terms it offered to him. Mr. Cooley, in his treatise on Torts, p. 278, well says: 'It is a part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice, or malice. With his reasons neither the public nor third ·persons. have any legal concern. It is also his right to have business relations with any one with whom he can make contracts, and, if he is wrongfully deprived of this right by others, he is entited to redress.'"     (p. 172.)

In the opinion in the Perry case (69 Kan. 303), this court quotes from a decision of the Illinois supreme court in a case involving substantially the same kind of a statute. The Illinois court said:

"The legislature can not prevent persons, who are *sui juris*, from laboring, or from making such contracts as they may see fit to make relative to their own lawful labor, nor has it any power by penal laws to prevent any person, with or without cause, from refusing to employ another or to terminate a contract with him, subject only to the liability to respond in a civil action for an unwarranted refusal to do that which has been agreed upon. Hence we are of the opinion that this act contravenes those provisions of the State and Federal constitutions, which guarantee that no person shall be deprived of life, liberty or property without due process of law." (*Gillespie v. The People*, 188 Ill. 176, 185, 58 N. E. 1007, 80 Am. St. Rep. 176.)

The opinion of this court in the Perry case approved the doctrine declared by the supreme court of Missouri in *State v. Julow*, 129 Mo. 163, 31 S. W. 781, 50· Am. St. Rep. 443, which was a·criminal proceeding

and in which a statute was held to be void because it sought to deprive, without due process of law, the employer of the right to make and terminate contracts. The Missouri statute made it a criminal offense for an employer to enter into any contract or agreement with any employee for the latter to withdraw from any labor or other lawful organization.

I confess my inability to appreciate the force of the supposed logic by which the statute involved in the present action is held to differ substantially from the Missouri statute. In *People v. Marcus*, 185 N. Y. 257, 77 N. E. 1073, 113 Am. St. Rep. 902, a criminal proceeding was based upon a New York statute which read as follows:

" 'Any person or persons, employer or employers of labor, and any person or persons of any corporation or corporations on behalf of such corporation or corporations, who shall hereafter coerce or compel any person or persons, employee or employees, laborer or mechanic, to enter into an agreement, either written or verbal from such person, persons, employee, laborer or mechanic, not to join or become a member of any labor organization, as a condition of such person or persons securing employment, or continuing in the employment of such person or persons, employer or employers, corporation or corporations, shall be deemed guilty of a misdemeanor.' "    (p. 259.)

• The New York court of appeals held the staute void because in conflict with the state and federal constitutions.    A similar statute enacted in Nevada was declared unconstitutional upon the same grounds.  (*Goldfield Consol. Mines Co. v. Goldfield M. U. No. 220*, 159 Fed. 500.)  A Wisconsin statute prohibited an employer from discharging an employee because he was a member of any labor organization.   The supreme court of. Wisconsin held the statute void as an unwarranted infringement of the constitutional right of liberty in making private contracts.  (*State, ex rel. Zillmer, v. Kreutzberg*, 114 Wis. 530, 90 N. W. 1098, 91 Am. St.

Rep. 934.)    The court in the opinion used this language:

"On this subject Mr. Tiedeman (Cont. of Pers. & Prop. 332) declares the opinion that a state statute which made it unlawful for an employer to refuse to employ union men, or to compel an employee to withdraw from a trade union on pain of dismissal, would be clearly unconstitutional."    (p. 545.)

*People v. Marcus, State v. Julow, Gillespie v. The People,* and *State, ex rel. Zillmer, v. Kreutzberg,* supra, are cited with approval (p. 175) by Justice Harlan in *Adair v. United States,* supra.    In the majority opinion comment is made on the fact that the court in the Adair case considered only a section of the act of congress which made it an offense for a carrier engaged in interstate commerce to discharge an employee simply because of his membership in a labor organization, and that the court declined to consider the precise question involved here.    There being no conviction under the section making it an offense to require the employee to agree not to become or remain a member of such organization the court, of course, did not have before it the question as to the validity of that section, and any opinion expressed upon that question would have been outside the issues and *obiter.* I think it is clear that if it is not within the power of congress to make it an offense for an employer to discharge the employee for such a reason, it would be equally beyond its power to make it an offense to notify him of the intention to do so unless he agreed to discontinue such membership.

The mere fact that in the present statute the legislature has seen fit to define such conduct as coercion will not avoid the objection that the law is beyond the scope of the proper exercise of the police power.    The state can not under the mere guise of police regulation, where it is apparent that its real object is not to protect the community or promote the general well-being,

deprive an individual of his liberty. (*Mugler v. Kansas*, 123 U. S. 623, 669, 8 Sup. Ct. 273, 31 L. Ed. 205.) In *Brick Co. v. Perry*, 69 Kan. 297, 76 Pac. 848, Justice Greene, speaking for this court, said:

"Before approaching a discussion of the question let us exclude any notion that the act in question is a police regulation. It will be observed that it does not affect the public welfare, health, safety or morals of the community, or prevent the commission of any offense or other manifest evil. Where the object of the act can not be traced to the accomplishment of some one of these purposes it is not a police regulation. . . . The right to follow any lawful vocation and to make contracts is as completely within the protection of the constitution as the right to hold property free from unwarranted seizure, or the liberty to go when and where one will. One of the ways of obtaining property is by contract. The right, therefore, to contract can not be infringed by the legislature without violating the letter and spirit of the constitution. Every citizen is protected in his right to work where and for whom he will. He may select not only his employer but also his associates. He is at liberty to refuse to continue to serve one who has in his employ a person, or an association of persons, objectionable to him. In this respect the rights of the employer and employee are equal. Any act of the legislature that would undertake to impose on an employer the obligation of keeping in his service one whom, for any reason, he should not desire would be a denial of his constitutional right to make and terminate contracts and to acquire and hold property. Equally so would be an act the provisions of which should be intended to require one to remain in the service of one whom he should not desire to serve." (p. 299.)

In the case of *State v. Julow*, 129 Mo. 163, 31 S. W. 781, the Missouri court said:

"Nor can the statute escape censure by assuming the label of a police regulation. It has none of the elements or attributes which pertain to such a regulation, for it does not in terms or by implication promote, or tend to promote, the public health, welfare, comfort or safety; and if it did, the state would not

be allowed under the guise and pretense of police regulation, to encroach or trample upon any of the just rights of the citizen, which the constitution intended to secure against diminution· or abridgement. *In· re Jacobs*, 98 N. Y. 98, and cases cited." (p. 177.)

The Minnesota case cited in the majority opinion (*The State, ex rel., v. Daniels*, 136 N. W. 584) was decided in June, 1912, and the statute there construed is substantially the same statute involved in this case. It reads:

"It shall be unlawful for any person, company, or corporation, or any agent, officer or employee thereof, to coerce, require, or influence any person to enter into any agreement, written or verbal, not to join, become, or remain a member of any lawful labor organization or association, as a condition of securing or retaining employment with such person, firm, or corporation." (Revised Laws of Minn. 1905, § 5097.)

In that opinion the court accepts the ruling of the United States supreme court in the Adair case as declaring it the law of the land "that an employer may dismiss from his service any employee he sees fit for no cause or for any cause, assigned or unassigned, arbitrary, capricious or otherwise" and that "discriminating against members belonging to labor organizations by discharging them from employment and retaining those employees only who do not belong or are willing to quit such organizations, can not be an offense because the constitution of the United States protects the employer in his liberty to so discriminate."

I concur in all that is said in the majority opinion respecting the right of laboring men to form organizations for the purpose of advancing their mutual interests and of protecting their rights as against unjust conditions of employment, which are sometimes imposed by wealthy individuals and more frequently by corporate employers; but I can not agree that because labor organizations are lawful, therefore the liberty of an employer of labor to insist that no person· who

The State v. Coppage.

remains in his service shall continue to belong to such organization is subject to the control of the legislature. In the majority opinion it is said that an employer "has no inherent right to dictate the church communion of the employee." (Ante, p. 760.) On the contrary, I think he has the inherent right to say to an employee that unless the latter becomes a Methodist, a Presbyterian, a Christian Scientist, or adopts whatever religious faith the employer professes, he will be discharged. And so has the employee the same right to refuse to enter or remain in the service unless the employer shall adopt his religious views. In *Nat. Protective Assn. v. Cumming*, 170 N. Y. 315, 63 N. E. 369, 88 Am. St. Rep. 648, it was held within the constitutional rights of employees to exact from an employer as a condition precedent to entering into his employment an agreement that he will not employ nonunion laborers. To the same effect is *Jacobs v. Cohen*, 183 N. Y. 207, 76 N. E. 5, 111 Am. St. Rep. 730. What would be said of an attempt by the legislature to make it a crime for members of labor organizations to coerce an employer into an agreement to discharge all nonunion workmen as a condition precedent to remaining in his service? That would clearly be an unwarranted interference with the liberty of the members of such organizations to fix the terms upon which they would agree to continue to work and would deprive them of a right guaranteed by the constitution of the United States as well as by the state constitution. And yet such a statute would be simply the reverse of the one now under consideration, and would be no more repugnant to the constitutional provisions against depriving persons of liberty of contract. For the foregoing reasons I dissent from the majority opinion.