## CHARLES GILLESPIE

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 20, 1900.*

1. CONSTITUTIONAL LAW—*rights of "liberty" and "property" embrace what is necessary to secure such rights.* The rights of "life," "liberty" and "property," as used in the Bill of Rights, embrace whatever is necessary to secure and effectuate the enjoyment of those rights.

2. SAME—*right of property includes the right to terminate contracts.* The right of property involves the right not only to contract but also to terminate contracts, such right being subject only to civil liability for an unwarranted termination.

3. SAME—*legislature cannot arbitrarily make an innocent act criminal.* The legislature cannot make an innocent act criminal when the public health, safety, comfort or welfare is not interfered with.

4. SAME—*"liberty" includes the right to labor or contract for labor.* "Liberty," as used in the constitution, includes not only the right to labor but also to refuse to labor, and, consequently, the right to contract to labor or contract for labor and to terminate or refuse to make such contracts.

5. SAME—*legislature cannot interfere with free right of contract.* The legislature cannot prevent persons who are *sui juris* from laboring or from making such contracts as they see fit, relative to their own lawful labor; nor has it the power, *by penal laws*, to prevent any person, with or without cause, from refusing to employ another or from terminating a contract to employ him.

6. SAME—*act of 1893, to protect members of labor unions, is unconstitutional.* The act of 1893, (Laws of 1893, p. 98,) making it a criminal offense for an employer to attempt to prevent his employees from joining labor unions or to discharge them because of their connection with labor unions, is unconstitutional, being in contravention of the provisions of the State and Federal constitutions, which guarantee that no person shall be deprived of life, liberty or property without due process of law.

7. SAME—*act of 1893 to protect "union" men is special legislation.* The act of 1893, to protect members of labor unions, is in violation of the constitutional prohibition against special legislation, since it attempts to make an employer criminally liable for discharging "union" employees whereas he is not so liable if he discharges a "non-union" employee, thus drawing an unwarrantable distinction between "union" and "non-union" men.

WRIT OF ERROR to the County Court of Vermilion county; the Hon. M. W. THOMPSON, Judge, presiding.

This is a criminal action, based upon an information filed in the county court of Vermilion county by the State's attorney of that county charging the plaintiff in error, Charles Gillespie, with violating section 32 of chapter 48, entitled "Employment." (Hurd's Stat. 1899). Said section 32 is: "An act to protect employees and guarantee their right to belong to labor organizations," approved June 17, 1893, in force July 1, 1893, and is as follows: "That it shall be unlawful for any individual or member of any firm, or agent, officer or employee of any company or corporation to prevent, or attempt to prevent, employees from forming, joining and belonging to any lawful labor organization, and any such individual, member, agent, officer or employee that coerces or attempts to coerce employees by discharging or threatening to discharge from their employ or the employ of any firm, company or corporation, because of their connection with such lawful labor organization, shall be guilty of a misdemeanor, and upon conviction shall be fined in any sum not exceeding $100.00, or be imprisoned for not more than six months, or both, in the discretion of the court." (Hurd's Stat. 1899, p. 844).

The original information consisted of two counts, but by leave of court an amended information was filed consisting of four counts. The first count of the information charges, that defendant below, Charles Gillespie, unlawfully and willfully attempted to prevent one Reuben Gibbons, an employee of his, from belonging to a certain lawful labor organization by discharging him from his employment, said lawful labor organization being Local Union No. 269 of the United Brotherhood of Carpenters and Joiners of America, lawfully organized, etc. The second count of the information charges, that Charles Gillespie unlawfully and willfully attempted to coerce one Reuben Gibbons, an employee of his, by discharging him from his service because Gibbons was a member of a certain lawful labor organization being Local Union No. 269

of the United Brotherhood of Carpenters and Joiners of America, lawfully organized. The third count charges, that Charles Gillespie unlawfully and willfully attempted to coerce Reuben Gibbons, an employee of his, into withdrawing from a certain lawful labor organization by threatening to discharge him from his service because Gibbons was a member of the said lawful labor organization, being Local Union No. 269 of said brotherhood, etc., lawfully organized. The fourth count of the information charges, that Charles Gillespie unlawfully and willfully attempted to coerce Gibbons, then an employee of his, into withdrawing from a lawful labor organization by discharging Gibbons from the service of Charles Gillespie because Gibbons was a member of said lawful labor organization, being Local Union No. 269, etc., lawfully organized, etc.

The plaintiff in error, Charles Gillespie, moved to quash the information upon the ground that the statute, upon which it was founded, was unconstitutional and void, as being in conflict with certain provisions of the Federal constitution and of the constitution of Illinois. This motion was overruled, and the defendant pleaded "not guilty."

After the evidence had all been introduced, plaintiff in error made a motion asking the court to exclude the evidence and discharge the plaintiff in error, upon the ground that the statute, on which the indictment was based, was unconstitutional and void as being in conflict with certain provisions of the Federal and State constitutions; but this motion was denied by the court.

Instructions were then given by the court to the jury, but certain instructions asked by the plaintiff in error, setting up the unconstitutionality of said statute, were refused by the court.

The jury returned a verdict finding the plaintiff in error guilty as charged in the information. A motion for a new trial was then made by the plaintiff in error, which

was overruled.   The plaintiff in error then moved in arrest of judgment, also, upon the ground of the unconstitutionality of the statute; but this motion was overruled by the court.   The court thereupon rendered judgment ordering the plaintiff in error to pay to the People a fine of $25.00 and costs, and to stand committed to the county jail until the said fine and costs were paid.   The present writ of error is sued out for the purpose of reviewing the judgment so rendered by the court below.

. The plaintiff in error, Charles Gillespie, lives in the town of Danville, Vermilion county, and is engaged, as a contractor, in the building trade.   As such contractor, he employed a number of carpenters, and, at the time the present controversy arose, was employing carpenters known as "non-union" men.   Reuben Gibbons, the prosecuting witness, had been employed by plaintiff in error for about ten months, but his employment was by the day, reckoning ten hours to the day, at 22½ cents an hour, or $2.25 per day.   Gibbons was employed for no definite length of time, but only by the day.   While so employed, he joined what was called a "union" labor organization. It is admitted that the union, which he joined, was a lawful labor organization.   Plaintiff in error had heard that Gibbons was going to join the union, but did not in any way interfere or molest him in so doing.   But after he became a member, plaintiff in error informed him, that he could not give him employment if he desired to belong to the union, claiming that the labor unions were enemies of his in business, and that it would not be consistent for him, under the circumstances, to employ "union" help. Plaintiff in error stated to Gibbons that, if he desired to remain in his employment, he would have to quit the union, and that, if he did not desire to quit the union, he would have to look elsewhere for employment, and that he could do as he desired.   Gibbons then left the employment of the plaintiff in error, whereupon this information was filed, and this prosecution was commenced.

PENWELL & LINDLEY, for plaintiff in error:

The legislature has no power, under the pretense of exercising police powers of the State, to enact laws, not for the preservation of the health and safety of the community, that will be burdensome upon the citizens. *King* v. *Davenport,* 98 Ill. 314; *Railroad Co.* v. *Jacksonville,* 67 id. 40.

The legislature has no power, under pretense of exercising police powers, to pass laws impairing the obligation of contracts or the right to contract or terminate contracts. *People* v. *Railroad Co.* 9 Mich. 307.

The terms "life," "liberty" and "property" are representative terms, and cover every right to which a member of the body politic is entitled under the law. *State* v. *Julow,* 29 L. R. A. 257; *Pritchard* v. *People,* 155 Ill. 98; *State* v. *Goodwill,* 33 W.Va. 179; 2 Story's Const. Law, (5th ed.) sec. 1950; *People* v. *Otis,* 90 N.Y. 48.

Property is placed in the some category with liberty and life. *Wynehamer* v. *People,* 13 N. Y. 478; *Ritchie* v. *People,* 155 Ill. 98; *Ruhstrat* v. *People,* 185 id. 133.

Labor is property. The right to contract and terminate contracts is a property right. *Ritchie* v. *People,* 156 Ill. 98; *Frorer* v. *People,* 141 id. 172; *Coal Co.* v. *People,* 147 id. 71; *Millett* v. *People,* 117 id. 295.

Where a statute does not relate to persons or things as a class, but to particular persons or things as a class, it is a special as contradistinguished from a general law. *State* v. *Tolle,* 71 Mo. 645; *State* v. *Herrman,* 75 id. 740; *Eden* v. *People,* 161 Ill. 297; Cooley's Const. Lim. 299, 391; *Lippman* v. *People,* 175 Ill. 106; *Ruhstrat* v. *People,* 185 id. 133; Bill of Rights, art. 2, secs. 1, 2; Const. art. 4, sec. 22; sec. 1 of 14th amendment to Const. of U. S.

S. G. WILSON, State's Attorney, (L. M. KENT, and C. H. BECKWITH, of counsel,) for the People:

The presumption of law is that the legislature, in enacting a statute, did not violate the constitution, and to doubt the constitutionality of a statute is to resolve in

favor of it.  *Hawthorn* v. *People*, 109 Ill. 302;  Endlich on
Interp. of Statutes, sec. 524.

It is alleged and claimed by plaintiff in error that the
statute in question is unconstitutional, on account of be-
ing class legislation.  In answer to this we will say, that
as we understand the statute it applies to all laboring
people who wish to belong to a labor union,—a matter of
choice with the individual himself, as it is a matter of
choice as to whether or not any person will become a
member of a church denomination.  The statute seeks to
protect the laboring person from the contractor in his
desires and efforts to control, not only the laborer during
the hours that he has his service engaged, but also at all
other times, and upon a subject that we maintain is none
of the contractor's affairs.  The tendency of legislation
is, and has been, to protect the weak, and in this line we
find legislation giving the laboring man the right to col-
lect an attorney's fee where he is compelled to sue for his
services.  It was objected in *Vogel* v. *Pekoc*, 157 Ill. 339,
that this legislation was unconstitutional, on the ground
of being class legislation, yet this court in that case sus-
tained the statute.  We also find that a debtor is not
entitled to any exemption where the laborer sues for
wages due.  We also find that a laborer has a first lien
for wages due him in case of the failure of his employer.
These are illustrations of legislation that has been chal-
lenged as being class legislation, and therefore unconsti-
tutional, yet courts have held it as being in compliance
with the constitution.  *Vogel* v. *Pekoc*, 157 Ill. 339; *Bohn* v.
*Weeks*, 50 Ill. App. 236.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

The question, raised by the motion to quash the in-
formation, by the motion to exclude the evidence and
discharge the plaintiff in error, by the refusal of instruc-
tions asked by the plaintiff in error, and by the overruling

of the motion in arrest of judgment, is the constitution-
ality of the statute of June 17, 1893, set forth in full in
the statement preceding this opinion. The provisions
of the constitution of this State, which the act in ques-
tion is said to contravene, are, *first:* Section 1 of article 2
of the Bill of Rights, which provides that "all men are
by nature free and independent, and have certain inher-
ent and inalienable rights—among these are life, liberty
and the pursuit of happiness;" *second,* section 2 of arti-
cle 2 of the Bill of Rights, which declares that "no person
shall be deprived of life, liberty or property without due
process of law;" *third,* section 22 of article 4 of the State
constitution, wherein the legislature is prohibited from
passing any local or special law, "granting to any cor-
poration, association or individual any special or exclu-
sive privilege, immunity or franchise whatever."

The provision of the constitution of the United States,
with which the statute in question is said to be in con-
flict, is section 1 of the fourteenth amendment, which
provides that "no State shall make or enforce any law
which shall abridge the privileges or immunities of citi-
zens of the United States; nor shall any State deprive
any person of life, liberty or property without due pro-
cess of law, nor deny to any person within its jurisdic-
tion the equal protection of the laws."

It may be assumed, that plaintiff in error attempted
to do the act with which he is charged, and that it lay in
his power to discharge, or attempt to discharge, Reuben
Gibbons from his employment because of his connection
with the "union" labor organization, which is admitted
to have been a lawful labor organization. Upon this as-
sumption, the question squarely arises whether or not
the statute in question contravenes the provisions of the
State and Federal constitutions above quoted.

The terms, "life," "liberty" and "property," are repre-
sentative terms, and intended to cover every right, to
which a member of the body politic is entitled under the

law. These terms include the right of self-defense, freedom of speech, religious and political freedom, exemption from arbitrary arrests, the right freely to buy and sell as others may. Indeed, they may embrace all our liberties, personal, civil and political, including the rights to labor, to contract, to terminate contracts, and to acquire property. None of these liberties and rights can be taken away except by due process of law. (2 Story on Const. —5th ed.—sec. 1950).

The rights of "life," "liberty" and "property" embrace whatever is necessary to secure and effectuate the enjoyment of those rights. The rights of liberty and of property include the right to acquire property by labor and by contract. (*Ritchie* v. *People*, 155 Ill. 98). If an owner can not be deprived of his property without due process of law, he cannot be deprived of any of the essential attributes, which belong to the right of property, without due process of law. Labor is property. The laborer has the same right to sell his labor, and to contract with reference thereto, as any other property owner. The right of property involves, as one of its essential attributes, the right not only to contract, but also to terminate contracts. (*Ritchie* v. *People, supra; State* v. *Julow*, 129 Mo. 163). In the case at bar, the contract between plaintiff in error and Gibbons was not for any definite period of time, but Gibbons was employed by the day at so much per hour.

In view of what has been said, it cannot be doubted that the plaintiff in error, Charles Gillespie, had a right to terminate his contract, if he had one, with Reuben Gibbons, subject to civil liability for any termination, which should be unwarranted. One citizen cannot be compelled to give employment to another citizen, nor can any one be compelled to be employed against his will. The act of 1893, now under consideration, deprives the employer of the right to terminate his contract with his employee. The right to terminate such a contract is guaranteed by the organic law of the State. The legislature

is forbidden to deprive the employer or employee of the exercise of that right. The legislature has no authority to pronounce the performance of an innocent act criminal when the public health, safety, comfort or welfare is not interfered with. The statute in question says that, if a man exercises his constitutional right to terminate a contract with his employee, he shall, without a hearing, be punished as for the commission of a crime.

In passing upon the validity of a statute similar to the act of 1893, the Supreme Court of Missouri in the case of *State* v. *Julow, supra,* has well said: "The law under review declares that to be a *crime,* which consists alone in the exercise of a constitutional right, to-wit, that of terminating a contract, one of the essential attributes of property, indeed property itself, under preceding definitions. * * * But the fact as charged, as already seen, is *not a crime,* and will not be a crime, so long as constitutional guarantees and constitutional prohibitions are respected and enforced. If an owner, etc., obeys the law on which this prosecution rests, he is thereby deprived of a right and a liberty to contract or terminate a contract as all others may; if he *disobeys* it, then he is punished for the performance of an act *wholly innocent,* unless indeed the doing of such act guaranteed by the organic law, the exercise of a right of which the legislature is forbidden to deprive him can, by that body, be conclusively pronounced criminal. We deny the power of the legislature to do this; to brand as an *offense* that which the constitution designates and declares to be *a right,* and therefore, an *innocent act,* and consequently we hold that the statute which professes to exert such a power is nothing more or less than a *'legislative judgment,'* and an attempt to deprive all, who are included within its terms, of a constitutional right without due process of law."

Here, the employment, as has already been stated, was by the day, and, at the end of each day, there was no obligation on the part of Gillespie to furnish another

day's work, and no obligation on the part of Gibbons to labor for Gillespie. At the time of the alleged offense, there was in fact no contract of employment; but at that time Gillespie said in substance to Gibbons: "I am not employing union men, and, if you belong to the union, you can look elsewhere for employment." This was not a crime on the part of the plaintiff in error, Gillespie. His sole offense consisted in refusing to give employment to a man, who belonged to a union labor organization. In other words, he merely exercised his constitutional right of terminating a contract, or refusing to make a contract. Liberty includes not only the right to labor, but to refuse to labor, and, consequently, the right to contract to labor or for labor, and to terminate such contracts, and to refuse to make such contracts. The legislature cannot prevent persons, who are *sui juris*, from laboring, or from making such contracts as they may see fit to make relative to their own lawful labor; nor has it any power by penal laws to prevent any person, with or without cause, from refusing to employ another or to terminate a contract with him, subject only to the liability to respond in a civil action for an unwarranted refusal to do that which has been agreed upon. Hence, we are of the opinion that this act contravenes those provisions of the State and Federal constitutions, which guarantee that no person shall be deprived of life, liberty or property without due process of law.

In addition to what has already been said, we regard this act as unconstitutional as being in violation of section 22 of article 4 of the State constitution as above quoted. The act certainly does grant to that class of laborers, who belong to union labor organizations, a special privilege. The employer, if he discharges a "union" man from his employment, is liable to be punished as having committed a crime. But he is not subject to punishment, if he should discharge from his employment a "non-union" laboring man. An unwarrantable distinction

is thus drawn between workingmen, who belong to union labor organizations, and workingmen, who do not belong to such organizations. That is to say, the statute does not relate to persons and things as a class, or to all workingmen, but only to those who belong to a lawful labor organization, that is to say, a labor union. "Where a statute does this, where it does not relate to persons or things as a class, but to particular persons or things of a class, it is a special as distinguished from a general law." (*State* v. *Tolle,* 71 Mo. 645; *State* v. *Herrmann,* 75 id. 340). We concur in the following view of this subject expressed by the Supreme Court of Missouri in *State* v. *Julow, supra:* "Here a non-trade-union man or non-labor-union man could be discharged without ceremony, without let or hindrance, whenever the employer so desired, with or without reason therefor, while in the case of a trade-union or labor-union man he could not be discharged if such discharge rested on the ground of his being a member of such an organization. In other words, the legislature have undertaken to limit the power of the owner or employer as to his right to contract with, or to terminate a contract with, particular persons of a class, and therefore the statute which does this is a special, and not a general law, and, therefore, violative of the constitution." Judge Cooley in his work on Constitutional Limitations (6th ed. pp. 481-483) says: "A statute would not be constitutional * * * which should select particular individuals from a class or locality, and subject them to peculiar rules or impose upon them special obligations or burdens from which others in the same locality or class are exempt. * * * Every one has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments."

For the reasons above stated, we are of the opinion that the statute in question is unconstitutional and void, and that the court below erred in not quashing the information and discharging the plaintiff in error.

Accordingly, the judgment of the county court of Vermilion county is reversed, and the cause is remanded to that court with directions to dismiss the prosecution.

*Reversed and remanded.*