THE COFFEYVILLE VITRIFIED BRICK AND TILE COMPANY v. T. P. PERRY.

No. 13,609. (76 Pac. 848.)

SYLLABUS BY THE COURT.

EMPLOYER AND EMPLOYEE — *Right to Discharge Employee — Act of 1897 Void.* A statute which makes it unlawful to discharge an employee because he belongs to a lawful labor organization and provides for the recovery of damages for such discharge is void. The right to terminate a contract is within the protection of the state and federal constitutions, which guarantee to every citizen the protection of life, liberty, and property.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed May 7, 1904. Reversed.

*J. B. & W. E. Ziegler*, for plaintiff in error.

*Joseph P. Rossiter*, and *George R. Snelling*, for defendant in error.

The opinion of the court was delivered by

GREENE, J.: The Coffeyville Vitrified Brick and Tile Company is a corporation engaged in manufacturing brick. T. P. Perry, one of its employees, was

discharged from its service and he brought this action to recover damages therefor, alleging discharge because he was a member of a labor association. The plaintiff recovered judgment, and the defendant prosecutes this proceeding in error.

The plaintiff based his right of action upon chapter 120, Laws of 1897 (Gen. Stat. 1901, §§ 2425, 2426), which reads :

"SECTION 1.  That it shall be unlawful for any person, company, or corporation, or agent, officer, manager, superintendent, master mechanic, or foreman of any person, company, or corporation, to prevent employees from joining and belonging to any labor organization, and any such person, company, or corporation, or any agent, manager, superintendent, master mechanic or other officer of any person, company or corporation that coerces or attempts to coerce employees by discharging or threatening to discharge said employees because of their connection with such labor organization, shall be deemed guilty of misdemeanor, and upon conviction thereof shall be fined in any sum not less than fifty dollars nor more than five hundred dollars.

"SEC. 2.  That any person, company or corporation doing any of the acts prohibited by section 1 of this act, shall be liable to the person injured, in exemplary or punitive damages not to exceed two thousand dollars, to be recovered by civil action, and in addition thereto a reasonable attorney fee to be recovered in said civil action for damages."

The defense was that this act, in so far as it undertakes to interfere with the right of an employer to discharge his employee, is a violation of that portion of section 1 of the fourteenth amendment to the constitution of the United States which reads :

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States ; nor shall any state deprive any

person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

It was also claimed that it violates section 1 of the bill of rights, which provides that "all men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness." The question thus presented is important, and we regret that the defendant in error has not favored us with briefs presenting his contention.

Before approaching a discussion of the question let us exclude any notion that the act in question is a police regulation. It will be observed that it does not affect the public welfare, health, safety or morals of the community, or prevent the commission of any offense or other manifest evil. Where the object of the act cannot be traced to the accomplishment of some one of these purposes it is not a police regulation. Besides, the legislature has no power to impair or limit the reasonable and lawful exercise of a right guaranteed by the constitution, under the guise of a police regulation. It must also be remembered that the right which the plaintiff claimed was violated did not originate in contract, but was purely statutory ; therefore, the determination of the question whether he has any remedy depends entirely upon the validity of this statute.

The right to follow any lawful vocation and to make contracts is as completely within the protection of the constitution as the right to hold property free from unwarranted seizure, or the liberty to go when and where one will. One of the ways of obtaining property is by contract. The right, therefore, to contract cannot be infringed by the legislature without violating the letter and spirit of the constitution.

Every citizen is protected in his right to work where and for whom he will. He may select not only his employer but also his associates. He is at liberty to refuse to continue to serve one who has in his employ a person, or an association of persons, objectionable to him. In this respect the rights of the employer and employee are equal. Any act of the legislature that would undertake to impose on an employer the obligation of keeping in his service one whom, for any reason, he should not desire would be a denial of his constitutional right to make and terminate contracts and to acquire and hold property. Equally so would be an act the provisions of which should be intended to require one to remain in the service of one whom he should not desire to serve.

In *Doremus v. Hennessy*, 176 Ill. 608, 615, 52 N. E. 924, 54 N. E. 524, 43 L. R. A. 797, 802, 68 Am. St. Rep. 203, where the employer refused to abide by the prices prescribed by a laundry union, and the members of the union refused to work for her, the court sustained them in so doing and said : "Every man has a right, under the law, as between himself and others, to full freedom in disposing of his own labor or capital according to his own will."

Also, in the case of *Arthur v. Oakes*, 11 C. C. A. 209, 216, 217, 63 Fed. 310, 25 L. R. A. 414, wherein the circuit court, during the labor troubles of 1894, enjoined certain employees from "so quitting as to cripple the property or prevent or hinder the operation of the railroad," the court of appeals, speaking by Harlan, J., held that it was erroneous, as invading the natural rights of men. He said :

"It would be an invasion of one's natural liberty to compel him to work for or to remain in the personal service of another. . . .

"The rule, we think, is without exception that equity will not compel the actual affirmative performance by an employee of merely personal services, any more than it will compel an employer to retain in his personal service one who, no matter for what cause, is not acceptable to him for service of that character."

Judge Cooley, in his work on Torts, first edition, page 278, says:

"It is a part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice, or malice."

Mr. Tiedeman, in section 204 of volume 2 of his work on State and Federal Control of Persons and Property, says:

"Every man has a natural right to hire his services to any one he pleases, or refrain from such hiring; and so, likewise, it is the right of every one to determine whose services he will hire. . . . Government, therefore, cannot exert any restraint upon the actions of the parties. . . ."

The business conducted by the defendant was its property, and in the exercise of this ownership it is protected by the constitution. It could abandon or discontinue its operation at pleasure. It had the right, beyond the possibility of legislative interference, to make any contract with reference thereto not in violation of law. In the operation of its property it may employ such persons as are desirable, and discharge, without reason, those who are undesirable. It is at liberty to contract for the services of persons in any manner that is satisfactory to both. No legislative restrictions can be imposed upon the lawful exercise of these rights. .

Within the past two decades there has been an epi-

demic of this class of legislation. New York, New Jersey, Pennsylvania, Ohio, Indiana, Illinois, Missouri, Wisconsin, Colorado and California have similar statutory provisions, and in such states, where the constitutionality of these statutes has been before the courts, the law has been universally held to be a denial of rights guaranteed by the provisions of the national and state constitutions. The first case which arose was *State v. Julow*, 129 Mo. 163, 31 S. W. 781, 29 L. R. A. 257, 50 Am. St. Rep. 443, and was a criminal prosecution to convict the manager of a shoe factory for discharging an employee because he refused, at the request of such manager, to withdraw his membership from the Lasters' Protective Association of America, a lawful labor-union. In the opinion, at page 175, the court said :

"Here, the law under review declares that to be a *crime*, which consists alone in the exercise of a constitutional right, to wit, that of terminating a contract, one of the essential attributes of property, indeed property itself, under preceding definitions. Brought to the bar of a court on such charge, the accused would have been *prejudged* in so far as the *criminality* of the act charged is concerned ; no question could there be made or admitted as to the *quality* of the act ; that would have been settled by the previous legislative declaration, and it would only remain to find the fact as charged, in order to declare the guilt as charged. But the fact as charged, as already seen, is *not a crime*, and will not be a crime so long as constitutional guaranties and constitutional prohibitions are respected and enforced.

"If an owner, etc., obeys the law on which this prosecution rests, he is thereby deprived of a right and a liberty to contract or terminate a contract as all others may ; if he *disobeys* it, then he is punished for the performance of an act *wholly innocent*, unless, indeed, the doing of such act guaranteed by the organic

law, the exercise of a right of which the legislature is forbidden to deprive him can, by that body, be conclusively pronounced criminal.   We deny the power of the legislature to do this; to brand as an *offense* that which the constitution designates and declares to be *a right*, and therefore an *innocent act*, and consequently we hold that the statute which professes to exert such a power is nothing more nor less than a *'legislative judgment,'* and an attempt to deprive all who are included within its terms of a constitutional right without due process of law."

The case of *Gillespie v. The People*, 188 Ill. 176, 182, 58 N. E. 1007, 52 L. R. A. 283, 80 Am. St. Rep. 176, was a prosecution under a statute similar to ours for discharging an employee for joining a labor-union. The court, in referring to the constitution, said :

"The terms 'life,' 'liberty' and 'property' are representative terms, and intended to cover every right to which a member of the body politic is entitled under the law.   These terms include the right of self-defense, freedom of speech, religious and political freedom, exemption from arbitrary arrests, the right freely to buy and sell as others may.   Indeed, they may embrace all our liberties, personal, civil, and political, including the rights to labor, to contract, to terminate contracts, and to acquire property.   None of these liberties and rights can be taken away, except by due process of law.   (2 Story, Const., 5th ed., sec. 1950.)   .   .   .   The rights of liberty and of property include the right to acquire property by labor and by contract.   (*Ritchie v. People*, 155 Ill. 98, 40 N. E. 454, 29 L. R. A. 79, 46 Am. St. Rep. 315.)   If an owner cannot be deprived of his property without due process of law, he cannot be deprived of any of the essential attributes which belong to the right of property without due process of law.   Labor is property.   The laborer has the same right to sell his labor and to contract with reference thereto as any other property-owner.   The right of property involves, as one of its essential attributes, the right not only to con-

tract but also to terminate contracts. . . . In view of what has been said, it cannot be doubted that the plaintiff in error, Charles Gillespie, had a right to terminate his contract, if he had one, with Reuben Gibbons, subject to civil liability for any termination which should be unwarranted. One citizen ' cannot be compelled to give employment to another citizen, nor can any one be compelled to be employed against his will. The act of 1893, now under consideration, deprives the employer of the right to terminate his contract with his employee. The right to terminate such a contract is guaranteed by the organic law of the state. The legislature is forbidden to deprive the employer or employee of the exercise of that right. The legislature has no authority to pronounce the performance of an innocent act criminal, when the public health, safety, comfort or welfare is not interfered with. The statute in question says that, if a man exercises his constitutional right to terminate a contract with his employee, he shall, without a hearing, be punished as for the commission of a crime.''

Still a later case is that of *The State, ex rel. Zillmer, v. Kreutzberg,* 114 Wis. 530, 545, 90 N. W. 1098, 58 L. R. A. 748, 91 Am. St. Rep. 934. The defendant was charged with having unlawfully discharged an employee because he was a member of a labor organization. The court said :

''Confining ourselves, then, to the act so charged and the statutory prohibition involved, is it within the legislative power to make criminal the refusal to contract with another for his labor for any reason which the employer deems cogent ? We speak of refusal to contract, for, while the act mentioned only discharge, it is in no wise limited to situations where there is any contract or other right to continuance of employment, and is obviously intended by the framers to apply generally to the relation of employer and employee, where, as common knowledge assures us, there is usually no term of employment and each day constitutes a new contract. As each morning

comes, the employee is free to decide not to work, the employer to decide not to receive him, but for this statute. That the act in question invades the liberty of the employer in an extreme degree, and in a respect entitled to be held sacred, except for the most cogent and urgent countervailing considerations, we have pointed out. Hardly any of the personal civil rights is higher than that of free will in forming and continuing the relation of master and servant. If that may be denied by law the result is legalized thraldom, not liberty—certainly not to the laboring men of the country. This aspect of the subject is too clear to warrant further discussion. Is there any conceivable reason to warrant such extreme invasion of individual liberty? Can it be necessary to the reasonable liberty of others under the law? The act here charged as criminal clearly does not deprive any other person of any private or civil right. Its utmost effect is to deny privilege of contract, but no right exists to enter into contract with another against his will."

For the reasons given, we are of the opinion that the statute in question is unconstitutional. The judgment is therefore reversed, with directions to set aside the judgment rendered and enter judgment for the defendant.

All the Justices concurring.