(110 App. Div. 255.)

PEOPLE v. MARCUS.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

1. MASTER AND SERVANT—PREVENTING EMPLOYÉ FROM JOINING LABOR UNION.
  Pen. Code, § 171a, provides that any person who shall "coerce or compel" any employé not to join any labor organization as a condition of such person securing employment or continuing the same shall be deemed guilty of a misdemeanor. *Held*, that the words "coerce or compel" do not imply the use of unlawful means, but mean the coercion or compulsion resulting from the desire to obtain work and the inability to obtain it without entering into such agreement.

2. CONSTITUTIONAL LAW—STATUTORY CREATION OF OFFENSE—COMPELLING EMPLOYÉ NOT TO JOIN LABOR UNION.
  Pen. Code, § 171a, providing that any employer of labor who shall coerce or compel any person or employé to enter into an agreement not to join or become a member of any labor organization as a condition of such person securing employment or continuing in the employment of such person, shall be deemed guilty of misdemeanor, contravenes Const. U. S. Amend. 14, § 1, and the corresponding provision of the state Constitution

(article 1, §§ 1, 6), providing that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, §§ 157, 844.]

Appeal from Court of Special Sessions of City of New York.

Harry Marcus was convicted of a violation of Pen. Code, § 171a, and he appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Elias B. Goodman, for appellant.

Robert S. Johnstone, for the People.

LAUGHLIN, J. The information charged that the defendant, on behalf of the H. Marcus Skirt Company, a corporation and an employer of labor, did "coerce and compel one Hymen Sheinbaum to enter into a written agreement * * * not to join or become a member of any labor organization as a condition of" securing employment from said company and continuing in its employ. A copy of the agreement was set forth in the information. The company therein agreed to employ Sheinbaum as a piece worker as long as he proved satisfactory and to pay for all finished work weekly, and he agreed not to belong to any labor union or take part in any strike against his employer, and in the event of his failure to comply with his agreement to forfeit any money due and also the amount deposited as security, which was $1 per week from his earnings not exceeding $10. The defendant pleaded guilty to the information, but at once moved in arrest of judgment, on the ground that the information does not state facts sufficient to constitute a crime, because the statute contravenes the fourteenth amendment to the federal Constitution, and also the state Constitution, "in that it restrains the right to free contract for a purpose not calculated, intended, convenient, or appropriate to protect the public health or to serve the public comfort or safety." The motion was denied and sentence passed, and thereupon the defendant appealed.

Section 171a of the Penal Code provides as follows:

"Any person or persons, employer or employers of labor, and any person or persons of any corporation or corporations on behalf of such corporation or corporations, who shall hereafter coerce or compel any person or persons, employé or employés, laborer or mechanic, to enter into an agreement, either written or verbal from such person, persons, employé, laborer or mechanic, not to join or become a member of any labor organization, as a condition of such person or persons securing employment, or continuing in the employment of any such person or persons, employer or employers, corporation or corporations, shall be deemed guilty of a misdemeanor. The penalty for such misdemeanor shall be imprisonment in a penal institution for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

The information to which the defendant pleaded guilty shows a violation of this section. The object of the appeal is to determine the constitutionality of the law.

The learned counsel for the people argues that the words of the

statute and of the information, "coerce or compel," imply the use of some unlawful means, and relate to and embrace something more than a mere suggestion or request. We are of opinion that this contention cannot be sustained. The statute was aimed at the coercion or compulsion resulting from the desire to obtain work and the inability to obtain it without entering into such agreement. The question therefore is, as we view it, whether it is competent for the Legislature to inflict criminal punishment on an employer for asking an applicant for employment whether he belongs to a labor union and whether he is willing to withdraw or agree not to join as a condition of obtaining employment, and making that a condition of the employment. It is manifest that if this legislation be constitutional, at some future time, when the Legislature is differently organized, it may make it a crime for a person whose employment is solicited to impose, as a condition of accepting the service, that the employer shall not employ nonunion men or those who do not belong to the particular union of the individual making the agreement. It is obvious that, if it was competent for the Legislature to enact this statute, it will be competent for it to enact in various forms class legislation that will not be for the public good. At one session it will enact legislation in the interest of the employers, and at another in the interest of employés; and these questions would become important political factors. Such legislation is a radical departure from what has been regarded in the past as the province of the Legislature. It has always been supposed, and the decisions so holding are numerous, that an employer, so long as the contract does not affect the public health, morals, or welfare, is at liberty to employ or discharge whomsoever he pleases and to refuse to employ any person, no matter what his motive therefor may be, without becoming answerable therefor, except for a breach of contract for an unjustifiable discharge of an employé, and likewise that an individual may accept or refuse any employment that he chooses or quit work at will, and that his reason therefor cannot be questioned, and he incurs thereby only liability for a breach of contract if he quit in violation of his contract. If it be competent for the Legislature to declare it a crime for an employer to exact as a condition of giving employment, which he is under no obligation to give, that the employé shall not belong to a labor union, then it must be equally competent for the Legislature to make it a crime for the employer to refuse to give work to one applying therefor who is unwilling to make such an agreement. It is clear that the agreement neither affects the public health or morals nor the health or morals of either the employer or employé. If, therefore, there be any authority under the police power by which the Legislature could enact such a measure, it must be upon the theory that it is in the interests of the public welfare.

The only theory suggested by which the legislation may be sustained upon that ground is that such an agreement will tend to disturb the public peace and order. If, under the federal and state Constitution an employer has a right to refuse to employ union men, or an employé has a right to refuse to work with nonunion men, as has been frequently adjudicated, then it is difficult to discover any reasonable

foundation for apprehension on the part of the Legislature concerning the public peace and order if either the employer or employé be permitted to act on his constitutional rights. We recollect no instance in which it has been held that it is competent for a Legislature to restrict one's constitutional rights upon the theory that, if he be permitted to exercise the same, others will become incensed thereby and violate the law, and be guilty of a breach of the peace or create public disorder. It is quite clear, I think, that no statute can be sustained on that theory. It is the duty of the state and nation to protect every citizen in the exercise of his constitutional rights, and, so long as the state and nation last, inability or unwillingness to perform that duty may not be assigned as a justification for a law making the exercise of one's constitutional rights a crime. It is urged that such an agreement may be declared unlawful and criminal because it discriminates against lawful organizations. It is true that labor unions are lawful organizations. The organization of labor into unions, for the betterment of the condition of the members concerning the hours of labor and the advancement of their earning power and matters of comfort and health, is looked upon with favor by the law and by the courts. Strikes, also, are lawful, so long as lawfully conducted. It has frequently been declared by the courts of this state that it is competent for the members of a labor union to refuse to work with non-union men, and to strike in case their demands are not acceded to. National Protective Ass'n of Stone Cutters v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648; Wunch v. Shankland, 179 N. Y. 545, 71 N. E. 1142; Mills v. U. S. Printing Co., 99 App. Div. 605, 91 N. Y. Supp. 185. It does not follow, however, that it is competent for the Legislature to force individuals, against their will, to become members of labor organizations as a condition of obtaining employment, or to compel employers, under the penalty of fine and imprisonment, to employ only union labor.

The contracts at which the provision of the Penal Code in question is aimed, it is true, do discriminate against labor unions; but that is in the lawful exercise of the right of the employer to employ whomsoever he pleases, and it is not competent for the Legislature to make it a crime for him to decide the question upon considerations of race, or of religion, or of the affiliations of the individual with civic organizations, unless, of course, he makes a contract contrary to public policy and affecting the state itself, as, for instance, imposing as a condition that the employé shall not join the National Guard, the maintenance of which is essential to the peace and safety of the people of the state. The statute, however, clearly discriminates in favor of labor unions by forbidding an employer either to impose as a condition of employment that the employé shall sever his relation with the union, or, if not a union man, shall not join a union. In the making of such a contract, both the employé and the employer are acting within their strict legal rights. The employé is not obliged to accept the employment on those conditions, and the employer is not obliged to give it without them. The provision of the federal Constitution which we think this statute contravenes is section 1 of

the fourteenth amendment; which, so far as material, provides as follows:

"Nor shall any state deprive any person of life, liberty or property, without due process of law nor deny to any person within its jurisdiction the equal protection of the laws."

The corresponding provisions of the state Constitution are sections 1 and 6 of article 1. The Court of Appeals in Jacobs v. Cohen (N. Y. Law Journal, Dec. 9, 1905) 76 N. E. 5, has recently sustained a tripartite contract made between a labor union, its members, and an employer, by which the latter agreed to employ only members of their union and to discharge any employé who should not join their union, and would not even employ members of their union except upon the presentation of a pass card signed by the business agent of the union showing the member to be in good standing. It was contended that this contract was void as in restraint of trade and constituting an infringement of individual rights. It was there held that the labor union, its members, and the employer were all acting within their constitutional rights in making that contract. If this conviction can be sustained, it is manifest that the Legislature could have made it criminal for the parties to make the contract which the court in the Jacobs Case declared that they had the constitutional right to make. There can be no legal distinction drawn between the power of the Legislature to make it a crime for an employer to exact an agreement from his employé that he will not join a labor union and the employé's power to exact from the employer an agreement that the latter will only employ union men. In Lochner v. New York, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, reversing People v. Lochner, 177 N. Y. 145, 69 N. E. 373, 101 Am. St. Rep. 773, it was held that section 110 of the labor law, inhibiting work by an employé in a bakery for more than 60 hours per week or 10 hours per day, was in violation of the right to contract guarantied by the Constitution. In Wright v. Hart, 182 N. Y. 330, 75 N. E. 404, it was held that chapter 528, p. 1249, Laws 1902, regulating the sale of merchandise in bulk, was void, because discriminatory, if intended to apply only to the merchant class, and violative of the right to contract and the right to own and transfer property. In Schnaier v. Navarre Hotel & I. Co., 182 N. Y. 83, 74 N. E. 561, it was held that chapter 803, p. 1052, of the Laws of 1896, making it unlawful for a person not a registered plumber to become a partner in the plumbing business with a registered plumber, was void as an infringement upon the right to contract. In People ex rel. Tyroler v. Warden, 157 N. Y. 116, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763, it was held that the ticket broker law was void as abridging the right to transact business. In People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465, it was held that the provisions of section 335a of the Penal Code prohibiting the sale of articles of food upon any representation that a prize would also be given was void as an infringement of liberty and property without any necessary or reasonable relation to the public interest in the matter. In People ex rel. Appel v. Zimmerman, 102 App. Div. 103, 92 N. Y. Supp. 497, section 384 of the Penal Code, prohibiting the issue of trading stamps, but exempting

those issued by a merchant in his own name, was held void, both as class legislation and as being an undue infringement of liberty of contract. A like doctrine was announced in Young v. Commonwealth (Va.) 45 S. E. 327, and State v. Ramseyer (N. H.) 58 Atl. 958. In Godcharles v. Wigeman, 113 Pa. 431, 6 Atl. 354, it was held that an act prohibiting the payment of wages in store orders was an infringment of the liberty of contract. In State v. Robins, 71 Ohio St. 273, 73 N. E. 470, 69 L. R. A. 427, a statute requiring surety company bonds for administrators was declared void as infringing the liberty of contract. In Kellyville Coal Company v. Harrier, 207 Ill. 264, 69 N. E. 927, 99 Am. St. Rep. 240, it was held that it was not competent for the Legislature to prohibit mining and manufacturing employers from keeping a store and paying for labor in goods. In Leep v. Railway Co., 58 Ark. 407, 25 S. W. 75, 23 L. R. A. 264, 41 Am. St. Rep. 109, a statute providing that a contractor or subcontractor or corporation constructing or operating a railroad or railroad bridge that should discharge without cause or refuse further employment to an employé should at once pay all wages earned, and, on failure so to do, should be liable at the same rate of wages until paid, was held unconstitutional as to natural persons, but valid as to corporations, as within the reserved power to alter, revoke, or annul their charters. A subsequent case, following this, was affirmed by the Supreme Court of the United States. St. Louis, I. M. & St. Paul R. R. Co. v. Paul, 173 U. S. 404, 19 Sup. Ct. 419, 43 L. Ed. 746. In Coffeyville Vitrified Brick & Pile Co. v. Perry (Kan.) 76 Pac. 848, 66 L. R. A. 185, it was held, following State v. Julow, 129 Mo. 163, 31 S. W. 781, 29 L. R. A. 257, 50 Am. St. Rep. 443, Gillespie v. People, 188 Ill. 176, 58 N. E. 1007, 52 L. R. A. 283, 80 Am. St. Rep. 176, and State ex rel. v. Kreutzberg, 114 Wis. 530, 90 N. W. 1098, 58 L. R. A. 748, 91 Am. St. Rep. 934, that a statute forbidding any person or corporation from discharging an employé because a member of a labor union was unconstitutional, both under the federal and state Constitutions.

Of course, contracts to evade the laws or otherwise against public policy are not within the protection of either the federal or state Constitution. Smiley v. Kansas, 196 U. S. 447, 25 Sup. Ct. 289, 49 L. Ed. 546. Many other cases might be cited tending to show that this legislation is unconstitutional. We have, however, digested the principal authorities. It thus clearly appears that the precedents are against the existence of power in the Legislature to enact such a statute. It follows that the object sought to be accomplished by the Legislature under this penal statute is one that must be left to peaceful agitation and public sentiment and individual freedom of action. It may be that the Legislature, under its reserved power to alter, amend, and repeal the charters of corporations and general laws under which they are formed, might declare it unlawful for corporations to make such contracts; but it is evident that the provisions of the Penal Code now under consideration was enacted on the assumption that the Legislature could thus regulate the contracts of individuals as well as of corporations. Many of the corporations affected are in business competition with individuals, and it would be unreasonable to impute to

the Legislature an intention to discriminate against domestic corporations in favor of the individuals in business competition with them. The learned counsel for the people neither suggested in the oral argument nor in his points that the statute is severable, and may be constitutional as to corporations even though unconstitutional as to individuals. We therefore do not deem it necessary to discuss the point, which suggested itself to us, further.

It follows that the judgment of conviction should be reversed, and the defendant discharged. All concur; McLAUGHLIN, J., in result.